* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A.4 through II.B.
 OPINION
 I. INTRODUCTION
Kevin S., a minor, appeals from the juvenile court's January 27, 2003, orders that he remain a ward of the court pursuant to Welfare and Institutions Code[1] section 602, subdivision (a), and placing him in a camp program for a period not to exceed three years eight months. Counsel appointed by us to represent the minor on appeal filed a brief in which no issues were raised. (People v. Wende (1979) 25 Cal.3d 436, 441-442
[158 Cal.Rptr. 839, 600 P.2d 1071] (Wende); see Smith v. Robbins (2000)528 U.S. 259, 264 [145 L.Ed.2d 756, 120 S.Ct. 746] (Smith).) On August 21, 2003, we advised the minor he had 30 days within which to submit by brief or letter any grounds of appeal, contentions, or argument he wished this court to consider. No response was received.
We asked the parties to brief two questions. First, we requested briefing as to whether Wende — outlining procedures designed to protect an indigent adult criminal defendant'sFourteenth Amendment right to appointed counsel on appeal — applies to an appeal in a juvenile delinquency matter. Second, we requested briefing as to whether the juvenile court correctly calculated the minor's predisposition credit. In the published portion of this opinion, we conclude a delinquency proceeding is sufficiently similar in substance and import to a criminal prosecution that indigent juveniles, like criminal defendants, are entitled pursuant to the Fourteenth Amendment of the United States Constitution to appointed counsel on a first appeal as of right. Consequently, a Wende brief was properly filed in this case. Pursuant to Wende, we then were required to conduct an independent evaluation of the record for error. Additionally, in the unpublished portion of this decision, we find the minor received inadequate custody credit for his predisposition detentions. We modify the juvenile court's orders to award the minor 333 days of predisposition credit. We affirm the juvenile court's January 27, 2003, orders in all other respects. *Page 100 
 II. DISCUSSION A. An Indigent Minor Adjudged a Juvenile Delinquent has a Fourteenth Amendment Right to Appointed Counsel on a First Appeal and Therefore the Procedures Set Forth in Wende Apply to this Case
Pursuant to what is apparently an unwritten practice, reflected primarily in unpublished opinions, the California Courts of Appeal have for many years accepted Wende briefs in appeals from juvenile delinquency cases. (See, e.g., In re Brittany L.
(2002) 99 Cal.App.4th 1381, 1385-1386 [122 Cal.Rptr.2d 376]; Inre Edward S. (1982) 133 Cal.App.3d 154, 157-158
[183 Cal.Rptr. 733].) However, no published California decision has discussed whether Wende in fact applies to an appeal in a juvenile delinquency matter. As noted earlier, we asked the parties to address that question in this case.
 1. The extent of an indigent criminal defendant's right to appointed counsel on appeal
 a. Griffin and Douglas
We first consider the federal constitutional right to counsel on appeal as it relates to indigent adult criminal defendants. There is no federal constitutional right to appeal in a criminal case. (Abney v. U.S. (1977) 431 U.S. 651, 656 [52 L.Ed.2d 651,97 S.Ct. 2034]; McKane v. Durston (1894) 153 U.S. 684, 685-689
[38 L.Ed. 867, 14 S.Ct. 913].) A state is not obligated, under the Fourteenth Amendment, to provide an appeal for a criminal defendant. (Abney v. U.S., supra, 431 U.S. at p. 656; Griffinv. Illinois (1956) 351 U.S. 12, 18 [100 L.Ed. 891, 76 S.Ct. 585] (plur. opn. of Black, J.).) However, where a state grants appellate review, it may not discriminate against some convicted defendants because of their poverty. (Griffin v. Illinois,supra, 351 U.S. at p. 18.) In Griffin, the United States Supreme Court plurality held adult defendants'Fourteenth Amendment due process and equal protection guarantees were violated when indigents could not secure appellate review because they were too poor to purchase transcripts of the trial court proceedings. (Griffin, at pp. 16-18.) Justice Black reasoned: "But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. Appellate review has now become an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations." (Id. at p. 18.) The plurality further noted, "There is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one *Page 101 
which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance." (Ibid.)
The duty of a state to provide an indigent criminal defendant appointed counsel on a first appeal granted as a matter of right was established in Douglas v. California (1963) 372 U.S. 353,357 [9 L.Ed.2d 811, 83 S.Ct. 814]. The Supreme Court emphasized it was addressing only the issue of the constitutionally guaranteed access to counsel for indigents during a first appeal granted as a matter of right. (Id. at p. 356.) In Douglas,
the United States Supreme Court held an adult indigent criminal defendant has a constitutional right, under theFourteenth Amendment, to the assistance of counsel on a first appeal as of right; "fair procedure" and "equality" demand that the indigent be given the benefit of counsel. (Douglas, at pp. 357-358.) Discussing the counsel issue solely in the context of a first appeal as a matter of right, the Supreme Court explained: to deny counsel on appeal to an indigent defendant would result in "a discrimination at least as invidious as that condemned in [Griffin]" (id. at p. 355). "For there can be no equal justice where the kind of an appeal a [woman or a] man enjoys `depends on the amount of money [she or] he has,' (Griffin v.Illinois, supra, [351 U.S.] at p. 19)" (Douglas v. California,supra, 372 U.S. at p. 355). "[T]he type of appeal a person is afforded" cannot be allowed to "hinge upon whether or not he [or she] can pay for the assistance of counsel" (id. at pp. 355-356); and to allow a criminal defendant's appeal to be decided without benefit of an attorney on account of poverty would be "a denial of due process or an `invidious discrimination.'" (Id. at pp. 355-357.) As it did in Griffin,
the court in Douglas cited the risk that one may be deprived of life, liberty or property: "`When society acts to deprive one of its members of his [or her] life, liberty or property, it takes its most awesome steps. No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged.'Coppedge v. United States [(1962)] 369 U.S. 438, 449
[8 L.Ed.2d 21, 82 S.Ct. 917]." (Douglas v. California, supra, 372 U.S. at p. 357, fn. 2.)
The Supreme Court has explained the Griffin and Douglas
analyses as follows: "The precise rationale for the Griffin andDouglas lines of cases has never been explicitly stated, some support being derived from the Equal Protection Clause of theFourteenth Amendment, and some from the Due Process Clause of that Amendment. Neither Clause by itself provides an entirely satisfactory basis for the result reached, each depending on a different inquiry which emphasizes different factors. `Due process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. `Equal protection,' on *Page 102 
the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." (Ross v. Moffitt (1974) 417 U.S. 600,608-609 [41 L.Ed.2d 341, 94 S.Ct. 2437], fn. omitted; accord,Bearden v. Georgia (1983) 461 U.S. 660, 665 [76 L.Ed.2d 221,103 S.Ct. 2064].) The Supreme Court has described the relationship between the two clauses in Griffin and its progeny. "Due process and equal protection principles converge in the Court's analysis in these cases." (Bearden v. Georgia,supra, 461 U.S. at p. 665; accord, Evitts v. Lucey (1985)469 U.S. 387, 403 [83 L.Ed.2d 821, 105 S.Ct. 830].) Later, the Supreme Court explained: "A `precise rationale' has not been composed, Ross, 417 U.S., at 608, because cases of this order `cannot be resolved by resort to easy slogans or pigeonhole analysis,' Bearden, 461 U.S., at 666. Nevertheless, `[m]ost decisions in this area,' the Court has recognized, `res[t] on an equal protection framework,' id., at 665,. . . . for due process does not independently require that the State provide a right to appeal. . . ." (M.L.B. v. S.L.J. (1996) 519 U.S. 102,104 [136 L.Ed.2d 473, 117 S.Ct. 555].)
Regardless of the lack of absolute theoretical certitude of the Supreme Court's precise analysis, it is clear the due process and equal protection principles articulated the Griffin plurality and Douglas majority opinions require that as a practical matter a criminal defendant be provided with effective merits-related appellate review. In Smith v. Robbins, supra,
528 U.S. at pages 276-277, the Supreme Court held: "[T]he two Clauses . . . require that a State's procedure `affor[d] adequate and effective appellate review to indigent defendants,'Griffin, 351 U.S., at 20 (plurality opinion). A State's procedure provides such review so long as it reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." Further, under the Due Process Clause of the Fourteenth Amendment, a criminal defendant, indigent or not, has a right to the effective assistance of counsel in a first appeal as of right. (Evitts v. Lucey, supra,
469 U.S. at p. 404; cf. Coleman v. Thompson (1991)501 U.S. 722, 756 [115 L.Ed.2d 640, 111 S.Ct. 2546] [Evitts premised on "`equality demanded by the Fourteenth Amendment'"].) Moreover, such representation provided by appointed appellate counsel must be in the role of an advocate, rather than as amicus curiae. (Entsminger v. Iowa (1967) 386 U.S. 748, 751 [18 L.Ed.2d 501,87 S.Ct. 1402]; Ellis v. United States (1958) 356 U.S. 674, 675
[2 L.Ed.2d 1060, 78 S.Ct. 974].)
 b. Anders and Wende
In Anders v. California (1967) 386 U.S. 738, 742-745
[18 L.Ed.2d 493, 87 S.Ct. 1396], the United States Supreme Court identified the duties of appointed appellate counsel in a first appeal as of right when there is no merit to an indigent adult criminal defendant's appeal. The Supreme Court held: the *Page 103 
constitutional substantial equality and fair process requirements can only be attained where counsel acts in the role of an active advocate on behalf of the defendant; if counsel finds the case to be wholly frivolous, the appellate court must be so advised; counsel should request permission to withdraw; the request to withdraw should be accompanied by a brief referring to anything in the record that might arguably support the appeal; the brief must be given to the indigent defendant; and the indigent defendant must be given an opportunity to raise any contentions. (Id. at p. 744.) Anders then required the appellate court to review the record to decide whether the appeal is wholly frivolous. If after a "full examination of all the proceedings" the court finds "no nonfrivolous issue for appeal," then it is to resolve the case on the merits, even without appointed counsel's participation. (Penson v. Ohio (1988) 488 U.S. 75, 80
[102 L.Ed.2d 300, 109 S.Ct. 346]; Anders v. California, supra,
386 U.S. at p. 744.)
The so-called Anders brief serves two functions. First, theAnders brief assists the court in assessing whether appointed counsel has in fact conducted a detailed review of the case. Second, the Anders process assists the court in evaluating whether the appeal indeed is frivolous and can be decided without adversary resolution. (Penson v. Ohio, supra, 488 U.S. at pp. 81-82; McCoy v. Court of Appeals of Wisconsin (1988)486 U.S. 429, 439 [100 L.Ed.2d 440, 108 S.Ct. 1895].) The Anders rule is not the result of an "`independent constitutional'" requirement but rather a "`prophylactic framework'" for vindicating the right to counsel established in Douglas v. California, supra,
372 U.S. at pages 357-358. (Smith v. Robbins, supra, 528 U.S. at p. 273; Pennsylvania v. Finley (1987) 481 U.S. 551, 555
[95 L.Ed.2d 539, 107 S.Ct. 1990].) The prophylactic framework is relevant only when there is a constitutional right to counsel on appeal. (Pennsylvania v. Finley, supra, 481 U.S. at p. 555; seeIn re Sade C. (1996) 13 Cal.4th 952, 972 [55 Cal.Rptr.2d 771,920 P.2d 716].)
In Wende, an appeal involving an adult criminal defendant, the California Supreme Court interpreted Anders as requiring that, when appointed appellate counsel finds no arguable issues, the justices must review the entire record to determine whether the appeal is in fact frivolous. (People v. Wende, supra,
25 Cal.3d at pp. 441-442.) The California Supreme Court further held appointed appellate counsel need not request to withdraw so long as two conditions are satisfied. First, appointed appellate counsel may not describe the appeal as frivolous. Second, the client must be advised of the right to request that appointed appellate counsel be relieved. (Id. at p. 442.) It is important to note that in Wende, the California Supreme Court relied solely on Anders. No independent basis for the Wende
procedures was set forth. (People v. Wende, supra, 25 Cal.3d at pp. 439-442.) It follows that the scope of Wende can only be as broad or narrow as Anders, the case on which it rests. IfAnders is applicable, then Wende is applicable. (See Countyof Kern v. Dillier (1999) *Page 104 69 Cal.App.4th 1412, 1419 [82 Cal.Rptr.2d 318].) If an indigent juvenile adjudged a delinquent has a Fourteenth Amendment right to appointed counsel on a first appeal as of right, then Wende
applies in this case.
 c. Smith
The constitutionality of the Wende procedures, which depart in certain respects from those established in Anders, were upheld in Smith v. Robbins, supra, 528 U.S. at pages 278-284.Smith held: the "prophylactic" procedure identified in Anders
was not binding on the states; "the States are free to adopt different procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel" (id. at p. 260); and California's Wende procedure "does not violate theFourteenth Amendment, for it provides `a criminal appellant pursuing a first appeal as of right [the] minimum safeguards necessary to make that appeal "adequate and effective,"' [Citation]" (Id. at p. 276.)
 d. Sade C.
The California Supreme Court has likewise held that theAnders procedures depend for their applicability on the existence of a right, under the Fourteenth Amendment, to the assistance of appointed appellate counsel in a criminal defendant's first appeal and are designed solely to protect that right. (In re Sade C., supra, 13 Cal.4th at pp. 977-978 (SadeC.).) Sade C., a dependency appeal, addressed the following question, "Does Anders apply to an indigent parent's appeal from a judgment or order, obtained by the state, adversely affecting his [or her] custody of a child or his [or her] status as the child's parent?" (Sade C., supra, 13 Cal.4th at p. 965.) The California Supreme Court answered that question in the negative. The Supreme Court held: "First, Anders establishes certain procedures for state appellate courts that are `prophylactic' in nature. [Citations.]" (id. at p. 977); "Second, Anders's `prophylactic' procedures are limited in their applicability to appointed appellate counsel's representation of an indigent criminal defendant in his first appeal as of right. [Citations.]" (id. at p. 978); "Third,Anders's `prophylactic' procedures are dependent for their applicability on the existence of an indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state in his [or her] first appeal as of right. [Citations.]" (ibid); and, "Fourth, Anders's `prophylactic' procedures are designed solely to protect an indigent criminal defendant's right, under theFourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state in his [or her] first appeal as of right. [Citations.]" (Ibid.) The California Supreme Court concluded Anders was inapplicable in dependency cases because: an indigent *Page 105 
parent is not a criminal defendant; dependency proceedings are civil in nature, not criminal; the indigent parent has no right under the Fourteenth Amendment's Due Process and Equal Protection Clauses to the assistance of appellate counsel appointed by the state; and because the Anders procedures are designed solely to protect that right, which is nonexistent for the indigent parent, "any protection of that nonexistent `right' . . . fails at bottom for lack of an object." (Sade C., supra, 13 Cal.4th at p. 983, fn. omitted.)
Sade C. further held: the Anders "`prophylactic'" procedures did not extend to a state-created right to counsel, whether constitutional, statutory, or by court rule; Anders did not protect "any right to the assistance of appellate counsel appointed by the state belonging to any indigent in his first appeal as of right"; the Anders procedures were not invoked by the indigent parent's right to appointed counsel under state statutes and rules of court; the Anders procedures were not compelled by the due process right to appointed appellate counsel the parent might have under the California Constitution; and theAnders procedures "should not be applied to [a state created right to counsel] outside the sphere of criminal law." (Sade C.,supra, 13 Cal.4th at pp. 983, fn. 13 986.) In short, the SadeC. court specifically rejected the argument that the Anders
procedures must be extended, under the Fourteenth Amendment, to an appeal in a non-criminal context, a dependency action, in order to protect the parent's state-created right to assistance of appointed appellate counsel. (Sade C. at p. 986.)
In Sade C., the California Supreme Court twice referred to appeals in juvenile delinquency matters. The court stated: "Generally, the Courts of Appeal have confined Anders andWende to criminal appeals. [Citations.] They have generally declined to reach into civil appeals. [Citations.] Exceptions,however, are apparent. (See County of Madera v. Jacobson
(1987) 194 Cal.App.3d 569, 570-573 [239 Cal.Rptr. 602] (percuriam) [purporting to extend Wende to paternity appeals];Conservatorship of Besoyan (1986) 181 Cal.App.3d 34, 36-38
[226 Cal.Rptr. 196] (per curiam) [same as to conservatorship appeals] . . .; see also In re Adrian O. (1984)155 Cal.App.3d 631, 635 [202 Cal.Rptr. 287] [appearing to assume that Wende is applicable to appeals from a termination of parental rights under the juvenile court law]; In re Edward S. (1982)133 Cal.App.3d 154, 157-158 [183 Cal.Rptr. 733] [same as to appeals from an adjudication of juvenile delinquency under the juvenile court law]; In re Laylah K. (1991) 229 Cal.App.3d 1496, 1498, fn. 1 [281 Cal.Rptr. 6] [same]; In re Deon D. (1989)208 Cal.App.3d 953, 955-956 [256 Cal.Rptr. 490] [same].)" (Sade C., supra,
13 Cal.4th at p. 962, fn. 2, italics added.) Later in Sade C., the Supreme Court disapproved of In re Andrew B. (1995)40 Cal.App.4th 825, 830 [47 Cal.Rptr.2d 604], which "broadly" concluded "`Anders/Wende procedures are required' whenever `there is a right to appointed [appellate] counsel,' apparently no matter what its source, at least when a `fundamental interest' is implicated. . . ." (Sade C., supra, *Page 106 
13 Cal.4th at p. 983, fn. 13.) Commenting on Andrew B. and decisions from other jurisdictions in accord therewith, the Supreme Court stated, "Their analysis falters on that presented in the text." (Sade C., supra, 13 Cal.4th at pp. 983-984, fn. 13.) The Supreme Court ended footnote 13 in the Sade C. opinion with the following, "To the extent that any decision of ours or of the Courts of Appeal states or implies that the applicability of Anders goes beyond what is described in the text, it is disapproved." (Ibid.)
Sade C. cannot be read as holding that Wende is inapplicable to juvenile delinquency appeals. The issue before the California Supreme Court in Sade C. was whether Anders
applied to an indigent parent's appeal from a judgment or order adversely affecting custody of a child or parental status. (SadeC., supra, 13 Cal.4th at p. 965.) The question whether Anders
and therefore Wende applies to an appeal from a juvenile delinquency proceeding was not before the California Supreme Court in Sade C. The California Supreme Court has stated numerous times that an opinion is not authority for a proposition not therein considered. (E.g., Robert L. v. Superior Court
(2003) 30 Cal.4th 894, 900, fn. 6 [135 Cal.Rptr.2d 30,69 P.3d 951]; Ginns v. Savage (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) Therefore, Sade C. is not authority for the following propositions: an indigent juvenile has no Fourteenth Amendment due process or equal protection right to appointed counsel on a first appeal as of right from a delinquency adjudication; a delinquent minor has no constitutional right to effective representation by counsel on appeal; and that Anders, and therefore Wende, is inapplicable to juvenile appeals.
2. A juvenile's right to counsel on appeal
 a. Delinquency law
We turn to California law with respect to juvenile delinquents. In California, juvenile delinquency matters are classified as civil proceedings. Section 203 states, "An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding." Nevertheless, in a juvenile delinquency proceeding, a minor is charged with criminal conduct (§ 602, subd. (a))[2] and is subjected to a potential restraint of liberty. *Page 107 
(§ 726.)[3] A juvenile alleged to be a delinquent has a statutory right to an attorney, including, if necessary, appointed counsel at all stages of the proceedings in the juvenile court. (§§ 625, 633, 634, 679.) Further, a juvenile adjudged a delinquent in California has a state-created right to appeal from that determination. (§ 800, subd. (a).)[4]
Moreover, the minor adjudged a delinquent ward of the court has a state-created right to appointed counsel in connection with that appeal. (Cal. Rules of Court, rule 1435.)[5]
 b. United States Supreme Court decisional authority on due process and juvenile delinquency proceedings
It is well-established that "the essentials of due process and fair treatment" apply to a juvenile delinquency adjudication. (In re Gault (1967) 387 U.S. 1, 30 [18 L.Ed.2d 527,87 S.Ct. 1428]; Schall v. Martin (1984) 467 U.S. 253, 263
[81 L.Ed.2d 207, 104 S.Ct. 2403]; Santosky v. Kramer (1982) 455 U.S. 745,766 [71 L.Ed.2d 599, 102 S.Ct. 1388]; In re Winship (1970)397 U.S. 358, 359 [25 L.Ed.2d 368, 90 S.Ct. 1068].) As the United States Supreme Court stated in Haley v. State of Ohio (1948)332 U.S. 596, 601 [92 L.Ed. 224, 68 S.Ct. 302], "Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law." (See DavidLevell W. v. California (1980) 449 U.S. 1043, 1047
[66 L.Ed.2d 504, 101 S.Ct. 622].) As the court later observed in Gault,
"[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone." (In re Gault, supra, 387 U.S. at p. 13; seeBellotti v. Baird (1979) 443 U.S. 622, 633 [61 L.Ed.2d 797,99 S.Ct. 3035] (plur. opn. of Powell, J.).) In Kent v.United States (1966) 383 U.S. 541, 553 [16 L.Ed.2d 84, 86 S.Ct. 1045], which turned on statutory language, the United States Supreme Court noted that "the basic requirements of due process and fairness" must be satisfied in juvenile delinquency proceedings. (See McKeiver v. Pennsylvania (1971) 403 U.S. 528, 531
[29 L.Ed.2d 647, 91 S.Ct. 1976] (plur. opn. of Blackmun, J.).) The question that arises in juvenile cases is not whether theFourteenth Amendment due process clause applies — it does. Rather, in juvenile proceedings, the United States Supreme Court has identified the *Page 108 
pertinent constitutional test, "The problem is to ascertain the precise impact of the due process requirement upon such proceedings." (In re Gault, supra, 387 U.S. at pp. 13-14;Alfredo A. v. Superior Court (1994) 6 Cal.4th 1212, 1247
[26 Cal.Rptr.2d 623, 865 P.2d 56].)
While the precise impact of the Fourteenth Amendment due process clause in delinquency proceedings differs from that in the adult context, the United States Supreme Court has extended constitutional protections associated with criminal prosecutions to minors alleged to be juvenile delinquents, including notice of charges; right to confrontation and cross-examination; the privilege against self-incrimination (In re Gault, supra,
387 U.S. at pp. 31-34, 42-57); the standard of proof beyond a reasonable doubt (In re Winship, supra, 397 U.S. at pp. 365-367); and double jeopardy. (Breed v. Jones (1975)421 U.S. 519, 541 [44 L.Ed.2d 346, 95 S.Ct. 1779].) On the other hand, the United States Supreme Court has held a jury trial is not constitutionally required (McKeiver v. Pennsylvania, supra,
403 U.S. at p. 545), nor is a juvenile in a federal case entitled to indictment by a grand jury or to bail. (See Kent v.United States, supra, 383 U.S. at p. 555.) As the United States Supreme Court noted in Schall v. Martin, supra, 467 U.S. at page 263, "[T]he Constitution does not mandate elimination of all differences in the treatment of juveniles. [Citation.] . . . We have tried, therefore, to strike a balance — to respect the `informality' and `flexibility' that characterize juvenile proceedings, [citation], and yet to ensure that such proceedings comport with the `fundamental fairness' demanded by the Due Process Clause. [Citations.]" (See Alfredo A. v. Superior Court,supra, 6 Cal.4th at p. 1248.)
With respect to the right to counsel, the United States Supreme Court has held that a minor has a due process right under the United States Constitution to representation by retained or appointed counsel in adjudication proceedings to determine delinquency, which may result in commitment to an institution in which the juvenile's freedom is curtailed. (In re Gault, supra,
387 U.S. at pp. 34-41; see In re William G. (1985)40 Cal.3d 550, 557, fn. 3 [221 Cal.Rptr. 118, 709 P.2d 1287].) The Gault
court held, "A proceeding where the issue is whether the child will be found to be `delinquent' and subjected to the loss of his [or her] liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he [or she] has a defense and to prepare and submit it. The child `requires the guiding hand of counsel at every step in the proceedings against him [or her].'" (In reGault, supra, 387 U.S. at p. 36, fns. omitted; see Breed v.Jones, supra, 421 U.S. at p. 530.) *Page 109 
The United States Supreme Court's decision in Gault applies only to the adjudicatory stage of juvenile delinquency proceedings. The Supreme Court explicitly held, "[W]e are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process." (In re Gault, supra, 387 U.S. at pp. 13 31, fn. 48.) Nor has the California Supreme Court held that a juvenile has a constitutional right to appointed counsel on appeal in a delinquency matter. In In re William F. (1974)11 Cal.3d 249, 254 [113 Cal.Rptr. 170, 520 P.2d 986], disapproved on another point in People v. Bonin (1988) 46 Cal.3d 659, 695, footnote 4 [250 Cal.Rptr. 687, 758 P.2d 1217], the California Supreme Court held, "The right of counsel in juvenile proceedings is predicated on due process concepts of fairness and is not necessarily as broad as the right to counsel in criminal proceedings."
However, the United States Supreme Court has made it clear that neither the "civil" label placed on delinquency proceedings, nor the rehabilitative rather than punitive goal of the juvenile court system, is a justification for declining to extend due process protections to minors. In extending constitutional protections to juveniles, the United States Supreme Court has repeatedly recognized that despite its designation as a civil proceeding, a juvenile delinquency matter is akin to a criminal prosecution; moreover, to insist otherwise is to adhere to "sentiment [or] folklore," "mere verbiage" and "cliche." (In reGault, supra, 387 U.S. at pp. 21-22, 29-30; see M.L.B. v.S.L.J., supra, 519 U.S. at p. 119.) Further, both the potential loss of liberty and the stigma attached to a delinquency finding compel the application of some of the due process protections available to criminal defendants in the juvenile context. (Addington v. Texas (1979) 441 U.S. 418, 427-428
[60 L.Ed.2d 323, 99 S.Ct. 1804]; Breed v. Jones, supra, 421 U.S at pp. 530-531.)
In Gault, the United States Supreme Court traced in detail the history and policies underlying the juvenile court system. (In re Gault, supra, 387 U.S. at pp. 14-31.) In its earliest form, the juvenile court system sought to separate and insulate the child from the criminal justice system. To that end, it dispensed with the rules of criminal procedure altogether. (Id.
at pp. 14-15.) The state was to act in the place of a parent with the goal of protecting and rehabilitating the minor. (Id. at pp. 16-17.) With respect to nonexistent procedural rights, the United States Supreme Court noted, "The right of the state, as parenspatriae, to deny to the child procedural rights available to his elders was elaborated by the assertion that a child, unlike an adult, has a right `not to liberty but to custody.' He can be made to attorn to his parents, to go to school, etc. If his parents default in effectively performing their custodial functions — that is, if the child is `delinquent' — the state may intervene. In doing so, it does not deprive the child of any rights, because he has none. It merely provides the `custody' to which the child is entitled. On this basis, *Page 110 
proceedings involving juveniles were described as `civil' not `criminal' and therefore not subject to the requirements which restrict the state when it seeks to deprive a person of his liberty." (Id. at p. 17, fns. omitted.) In Gault, the United States Supreme Court described this system as "peculiar" and noted, "The constitutional and theoretical basis for this peculiar system is — to say the least — debatable." (Id. at p. 17.) The Supreme Court reasoned it ignored reality to describe juvenile proceedings as "civil" and therefore not warranting due process protections applicable in the criminal arena; the truth was that minors adjudicated delinquents are stigmatized, they acquire a record that can follow them through life, and they may be restrained of liberty for years. (Id. at pp. 17-25.) The court further rejected the notion that due process protections should not apply in delinquency proceedings because juveniles benefit from informal court proceedings. The court reasoned increased due process protections would likely benefit minors, "[T]he appearance as well as the actuality of fairness, impartiality and orderliness — in short, the essentials of due process — may be a more impressive and therapeutic attitude so far as the juvenile is concerned." (Id. at p. 26; see In reRogers S. (1977) 19 Cal.3d 921, 930 [141 Cal.Rptr. 298,569 P.2d 1286].) In concluding certain due process rights must be extended to juveniles — notice of charges, right to counsel, confrontation, self-incrimination, and cross-examination — the United States Supreme Court observed in Gault: "Due process of law is the primary and indispensable foundation of individual freedom. It is the basis and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise." (In re Gault, supra,
387 U.S. at p. 20.) With respect to the right to counsel at the adjudicatory phase, the United States Supreme Court held the probation officer cannot act as counsel for the minor, nor can the judge. The Supreme Court concluded: "There is no material difference in this respect between adult and juvenile proceedings of the sort here involved. . . . A proceeding where the issue is whether the child will be found to be `delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel. . . ." (Id. at p. 36; see Argersinger v. Hamlin
(1972) 407 U.S. 25, 34 [32 L.Ed.2d 530, 92 S.Ct. 2006].)
In the decision of In re Winship, supra, 397 U.S. at page 368, the United States Supreme Court held that the reasonable doubt standard is constitutionally required in both criminal prosecutions and juvenile delinquency adjudications. With respect to juvenile proceedings, the court held, "[T]he constitutional safeguard of proof beyond a reasonable doubt is as much required during the adjudicatory stage of a delinquency proceeding as are those constitutional safeguards applied in Gault — notice of charges, right to counsel, the rights of confrontation and examination, and the privilege against self-incrimination." (Ibid.; see In re C.E.M. (1970) 13 Cal.App.3d 75, 79 *Page 111 
[91 Cal.Rptr. 382].) Application of the reasonable doubt standard "reduc[ed] the risk of convictions resting on factual error." (In re Winship, supra, 397 U.S. at p. 363; see In re Eddie M.
(2003) 31 Cal.4th 480, 503 [3 Cal.Rptr.3d 119, 73 P.3d 1115].) The Supreme Court reasoned the reasonable doubt standard plays a "vital role" in criminal procedure because of the risk of convictions resting on factual error, and the potential loss of liberty, an "immense[ly] important[t]" interest, one "of transcending value," together with the certainty of stigmatization. (In re Winship, supra, 397 U.S. at pp. 363-364; see People v. Burnick (1975) 14 Cal.3d 306, 324
[121 Cal.Rptr. 488, 535 P.2d 352].) Those same considerations compelled the court to extend the reasonable doubt standard of proof to juvenile delinquency matters. The Supreme Court held, "The same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child." (In re Winship, supra, 397 U.S. at p. 365; accord, In reFrancisco N. (1986) 186 Cal.App.3d 175, 179 [230 Cal.Rptr. 475], disapproved on another point in In re Manuel L. (1994)7 Cal.4th 229, 239, fn. 5 [27 Cal.Rptr.2d 2, 865 P.2d 718].) Neither the "civil" label applied to nor the protective goal of juvenile delinquency proceedings sufficed to distinguish those matters from criminal prosecutions. (In re Winship, supra,
397 U.S. at p. 365; see Conservatorship of Roulet (1979)23 Cal.3d 219, 225 [152 Cal.Rptr. 425, 590 P.2d 1].) The Winship court stated that in Gault, "We made clear . . . that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for `[a] proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.' [Inre Gault, supra, 387 U.S. at] p. 36." (In re Winship, supra,
397 U.S. at pp. 365-366; see In re E.L.B. (1985)172 Cal.App.3d 780, 786 [218 Cal.Rptr. 429].) The Winship court reasoned that to apply the reasonable doubt standard in juvenile proceedings would not risk destroying the beneficial aspects of the juvenile process. The United States Supreme Court concluded, "[Judicial] intervention cannot take the form of subjecting the child to the stigma of a finding that he violated a criminal law and to the possibility of institutional confinement on proof insufficient to convict him were he an adult." (In re Winship, supra, 397 U.S. at p. 367, fn. omitted; accord, In re Arthur N. (1976)16 Cal.3d 226, 239-240 [127 Cal.Rptr. 641, 545 P.2d 1345].)
After Winship, the United States Supreme Court next considered the application of the Fourteenth Amendment due process clause to juvenile delinquency proceedings in McKeiverv. Pennsylvania, supra, 403 U.S. at pages 531-551. The issue inMcKeiver was whether the Fourteenth Amendment due process clause guaranteed a minor the right to trial by jury in the "adjudicative" phase of delinquency proceedings. (Id. at p. 530.) In McKeiver, the Supreme Court plurality reiterated its previous analysis that the Fourteenth Amendment due process clause "`has a role to play'" in *Page 112 
juvenile adjudicatory hearings and identified the issue as follows, "[O]ur task here with respect to trial by jury, as it was in Gault with respect to other claimed rights, `is to ascertain the precise impact of the due process requirement.' [In re Gault, supra, 387 U.S. at pp.] 13-14." (McKeiver v.Pennsylvania, supra, 403 U.S. at p. 541.) The Supreme Court plurality concluded that the Fourteenth Amendment jury trial was not a necessary element of accurate factfinding. The plurality concluded: "All the litigants here agree that the applicable due process standard in juvenile proceedings, as developed by Gault
and Winship, is fundamental fairness. As that standard was applied in those two cases, we have an emphasis on factfinding procedures. The requirements of notice, counsel, confrontation, cross-examination, and standard of proof naturally flowed from this emphasis. But one cannot say that in our legal system the jury is a necessary component of accurate factfinding." (Id. at p. 543; accord, In re William F., supra, 11 Cal.3d at p. 254.) As a result, the Supreme Court plurality concluded there was noFourteenth Amendment due process right to a jury trial during a juvenile adjudicatory hearing. (McKeiver v. Pennsylvania,supra, 403 U.S. at p. 545.)
In Breed v. Jones, supra, 421 U.S. at pages 528-529, the United States Supreme Court found that retrying a person as an adult after a juvenile court adjudication of delinquency violated the double jeopardy protections made applicable in state prosecutions by the Fourteenth Amendment due process clause. In so holding, the court observed: "Although the juvenile-court system had its genesis in the desire to provide a distinctive procedure and setting to deal with the problems of youth, including those manifested by antisocial conduct, our decisions in recent years have recognized that there is a gap between the originally benign conception of the system and its realities. With the exception of McKeiver v. Pennsylvania (1971)403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976] [finding no jury trial right in juvenile proceedings], the Court's response to that perception has been to make applicable in juvenile proceedings constitutional guarantees associated with traditional criminal prosecutions. In re Gault, [supra,] 387 U.S. 1
[18 L.Ed.2d 527, 87 S.Ct. 1428]; In re Winship, [supra,] 397 U.S. 358
[25 L.Ed.2d 368, 90 S.Ct. 1068]." (Breed v. Jones, supra, 421 U.S. at pp. 528-529.) The court concluded: "We believe it is simply too late in the day to conclude . . . that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years. For it is clear under our cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew `the "civil" label-of-convenience which has been attached to juvenile proceedings,' In re Gault, supra, [387 U.S.] at [p.] 50, and that `the juvenile process . . . be candidly appraised.' 387 U.S. at [p.] 21. See In re *Page 113 Winship, supra, [397 U.S.] at [pp.] 365-366." (Breed v. Jones,supra, 421 U.S. at p. 529, fn. omitted.) In terms of double jeopardy concerns, the United States Supreme Court found "no persuasive distinction" between a juvenile proceeding and an adult criminal prosecution. (Id. at p. 531; see In re JavierA. (1984) 159 Cal.App.3d 913, 959 [206 Cal.Rptr. 386].)
In Lassiter v. Department of Social Services (1981)452 U.S. 18, 25-27, 31 [68 L.Ed.2d 640, 101 S.Ct. 2153], the United States Supreme Court summarized its precedents on an indigent's right to appointed counsel. The court held, "The pre-eminent generalization that emerges . . . is that such a right has been recognized to exist only where the litigant may lose [or potentially lose] his [or her] physical liberty if he [or she] loses the litigation. . . . [¶] . . . [¶] In sum, the Court's precedents speak with one voice about what `fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he [or she] loses, he [or she] may be deprived of his [or her] physical liberty." (Id. at pp. 25-27; see Walker v. State Bar
(1989) 49 Cal.3d 1107, 1116 [264 Cal.Rptr. 825, 783 P.2d 184].)
 c. Other assessments of Anders and juveniles
Returning to the question whether Anders, and thereforeWende, applies in an appeal from a juvenile delinquency determination, we note that the United States Court of Appeals for the Seventh Circuit has held that a delinquent minor has aFourteenth Amendment right to appointed counsel on appeal, albeit on equal protection grounds. (Reed v. Duter (1969)416 F.2d 744, 748-750.) In Reed, the minor sought a writ of habeas corpus after she was found to be a juvenile delinquent was not advised she had a right to appeal, was not advised she had a right to the appointment of counsel for that purpose, and did not file a notice of appeal. The Seventh Circuit Court of Appeals held, "Gault must be construed as incorporating in juvenile court procedures, which may lead to deprivation of liberty, all of the constitutional safeguards of the Fifth andSixth Amendments to the Constitution of the United States which apply, by operation of the Fourteenth Amendment, in criminal proceedings. The juvenile must be advised of the charges against him, he may not be denied the right to representation by counsel, he must be advised that counsel will be appointed to represent him, upon request, if he be indigent, the privilege against self-incrimination applies, and any finding of delinquency which may lead to deprivation of liberty cannot stand unless such finding be based upon the sworn testimony of his accusers, subject to the full opportunity for cross-examination. In reGault, [supra,] 387 U.S. [at pp.] 33-34, 36-37, 41, 49, 55, 57. [¶] We must interpret Gault, in light of the constitutional principles pronounced in Griffin, Anders and Douglas, as *Page 114 
requiring that Wisconsin may not deny to appellant the right to an effective review of the proceedings which led to her commitment to custody. She cannot be held accountable for any consequences which might attach to the fact that the immediate avenue for review by direct appeal was lost because of her inaction, since it affirmatively appears that she was never advised that she had the right to appeal and the right to have counsel appointed for that purpose. Equal protection of the laws requires that she have an equal opportunity for a first appellate review, and that such proceeding be effective for the full protection of her constitutional rights. Wisconsin does provide preliminary judicial consideration of merit to claims of error by prisoners and does appoint counsel for indigent adult prisoners upon such claims. [Citation.] Appellant here has not been able to obtain any consideration on the merits of her petition or of her right to counsel thereon, apparently because of concern by the courts with what public funds would be used to pay for counsel. Under Gault, there can be no constitutionally permissible discrimination between the adult prisoner and the juvenile defendant held in state custody." (Reed v. Duter, supra,
416 F.2d at pp. 749-750, fn. omitted.)
In addition, courts in other states have applied Anders in juvenile delinquency appeals. As has been the case in California, a large number of decisions do so without discussion. (In reBryan H. (N.Y. 2003) 301 A.D.2d 603 [753 N.Y.S.2d 859]; F.W. v.State (Fla.Dist.Ct.App. 2001) 777 So.2d 1100, 1101; In re M.F.
(Ill.App. 2000) 315 Ill.App.3d 641 [734 N.E.2d 171, 173, 248 Ill.Dec. 463]; In re Jason T. (2000) 340 S.C. 455
[531 S.E.2d 544, 545]; In re J.A.H. (Tex.App. 1999) 996 S.W.2d 933, 934;D.L.G. v. State (Fla.Dist.Ct.App. 1997) 701 So.2d 379, 380;State v. Hairston (Wash. 1997) 133 Wn.2d 534 [946 P.2d 397, 398-400]; Hans v. State (Mont. 1997) 283 Mont. 379
[942 P.2d 674, 681, 692]; In re Jarvis P. (N.Y. 1997) 240 A.D.2d 750
[660 N.Y.S.2d 990, 991]; In re Unrue (Ohio App. 1996)113 OhioApp.3d 844 [682 N.E.2d 686, 687]; Commonwealth v. Heron (Pa.Super. 1996) 449 Pa.Super. 684 [674 A.2d 1138, 1139]; In re Stacey R.
(S.C. 1993) 311 S.C. 312 [428 S.E.2d 869]; In re Smith
(La.Ct.App. 1992) 597 So.2d 101, 102; T.L. v. State (Ga.App. 1984) 169 Ga.App. 784 [315 S.E.2d 296]; G.K.D. v. State
(Fla.Dist.Ct.App. 1980) 391 So.2d 327, 328; People v. Moore
(Ill.App. 1975) 32 Ill.App.3d 367 [336 N.E.2d 599].)
In Gilliam v. State (Ark. 1991) 305 Ark. 438 [808 S.W.2d 738, 739-741], the Supreme Court of Arkansas held Anders applied to an appeal from an adjudication of juvenile delinquency. The court's extensive, often-cited discussion states in part: "InAnders, the United States Supreme Court held that a criminal appellant may not be denied representation on appeal based on appointed counsel's conclusory assertion that counsel is of the opinion that there is no merit to the appeal. The court set up a procedure to follow for allowing appointed counsel for an indigent criminal defendant to withdraw from a first appeal on the basis that the appeal is frivolous. . . . It is clear that a denial of counsel in a criminal case casts such doubt on the fairness of the *Page 115 
trial process that it can never be considered harmless error. Because the fundamental importance of the assistance of counsel does not cease as a prosecutorial process moves from the trial to the appellate stage, the presumption of prejudice must extend as well to the denial of counsel on appeal. Satterwhite v. Texas
(1988) 486 U.S. 249 [100 L.Ed.2d 284, 108 S.Ct. 1792]. [¶] Although delinquency proceedings are not penal in nature and are essentially a civil proceeding, certain due process safeguards, made applicable to the states by the fourteenth amendment, normally associated with criminal proceedings have been extended for the protection of juveniles. Among these is the right to counsel at the adjudicatory stage of the proceedings. In reGault, [supra,] 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]. . . . The right to counsel in juvenile proceedings is specifically provided in Ark. Code Ann. § 9-27-316 (Repl. 1991). [¶] Given that a juvenile has a constitutional right to counsel, the next question is whether a juvenile has a right to effective assistance of counsel. While a criminal defendant's right to effective assistance of counsel is based on the sixth amendment of the United States Constitution, made applicable to the states through the fourteenth amendment, Gideon v. Wainwright (1963)372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792], a child's constitutional right to counsel in a juvenile proceeding is based on the due process clause of the fourteenth amendment and is not necessarily as broad as the right to counsel in a criminal case.In re Gault, [supra,] 387 U.S. 1 [18 L.Ed.2d 527,87 S.Ct. 1428]; see also McKeiver v. Pennsylvania, [supra,]403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976]. As the law relating to the right to effective representation by counsel has developed, however, the distinction as to the source of the right to effective counsel has become `a distinction without a difference.' Matter of Smith (1990) 393 Pa.Super. 39
[573 A.2d 1077, 1079]. Various decisions have held that the right to counsel is the equivalent of the right to effective counsel; otherwise, there is a denial of due process. Evitts v. Lucey,
[supra,] 469 U.S. 387 [83 L.Ed.2d 821, 105 S.Ct. 830];Strickland v. Washington (1984) 466 U.S. 668 [80 L.Ed.2d 674,104 S.Ct. 2052]. It has now been established that there is a right to effective assistance of counsel on appeal. Evitts v.Lucey, [supra,] 469 U.S. 387 [83 L.Ed.2d 821, 105 S.Ct. 830]. [¶] The Supreme Court has not held that due process affords a right of appeal in criminal proceedings. It has held that to the extent a state makes an appeal available to criminal defendants, equal protection requires that the appeal procedure be available to all such persons. Griffin v. Illinois, [supra,]351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585]. Although there is no constitutional right to appeal from juvenile court orders, any statutory appeal procedure must be administered fairly to all persons to avoid denial of equal protection. . . . [¶] We find that juveniles have a due process right to counsel on appeal based on the application of the reasoning in Gault. Moreover, the equal protection clause requires counsel for juveniles on appeal if adults are so entitled. This conclusion follows the Supreme Court's decision in Douglas v. California, [supra,]372 U.S. 353 *Page 116 
[9 L.Ed.2d 811, 83 S.Ct. 814], in which the court held that, although no constitutional right to appeal exists, if states afford a statutory appeal procedure, fairness dictates that counsel be appointed for persons unable to afford counsel. The State of Arkansas in Ark. Code Ann. § 9-27-343 (Repl. 1991) gives a juvenile a right of direct appeal. Due process requirements ordinarily accorded criminal appellants extend to safeguard the juvenile's appeal. See State v. Berlat (1985), 146 Ariz. 505
[707 P.2d 303]. Even though the right of counsel in juvenile proceedings is predicated on due process concepts of fairness and is not necessarily as broad as the right to counsel in criminal proceedings, if due process requires that the juvenile be represented at trial and on appeal by effective counsel, then counsel are required to comport with the same procedures set out in Anders which were established to assure that there is no denial of the right to counsel on appeal." (Gilliam v. State,supra, 808 S.W.2d at pp. 738-740.)
In State v. Berlat, supra, 707 P.2d at page 307, the Supreme Court of Arizona held, "[D]ue process and the right to counsel extend to the juvenile's first appeal as of right." Under Arizona rules and statute, the juvenile had a right to appeal. The Arizona Supreme Court held, under the rationale of Gault andEvitts v. Lucey, supra, 469 U.S. at page 404, the right of appeal carried with it the guarantee of effective counsel on appeal. In the decision of In re D.A.S. (Tex. 1998) 41 Tex.Sup. Ct. J. 1148 [973 S.W.2d 296, 299], the Supreme Court of Texas expressly held that the Anders procedures apply in juvenile delinquency proceedings. The Texas Supreme Court reasoned: juvenile cases, although classified as civil proceedings, are quasi-criminal in nature; juveniles have a constitutional right to counsel during the delinquency determination; the Texas Legislature had mandated that juveniles receive the assistance of counsel on a first appeal; and extending Anders to those cases would effectuate the legislative mandate and protect the juveniles' statutory right to counsel. (In re D.A.S., at p. 298.) The Texas Supreme Court concluded, "Extending Anders to juvenile appeals will properly balance juveniles' statutory right to counsel against appointed counsels' obligation not to prosecute frivolous appeals." (Id. at p. 299.)
Similarly, in the case of In re May (N.C.App. 2002)153 N.C. App. 299 [569 S.E.2d 704, 706-707] (affd. on other grounds,357 N.C. 423 [584 S.E.2d 271, 277]), the North Carolina Court of Appeals held that Anders review is appropriate in juvenile delinquent proceedings. The court held: "Although a juvenile delinquency proceeding is not for all purposes treated as a criminal proceeding, the United States Supreme Court has held a juvenile alleged to be delinquent is entitled to `the essentials of due process.' Kent v. United States (1966) 383 U.S. 541, 562
[16 L.Ed.2d 84, 86 S.Ct. 1045]. Essentials of due process have been determined to include the right to appointed counsel, the right against self incrimination, and the right to timely notice of the allegations. In re Gault, [supra,] 387 U.S. 1
[18 L.Ed.2d 527, 87 S.Ct. 1428]. *Page 117 
The essentials of due process also include the right and opportunity of an indigent juvenile to have her case presented on appeal. Gilliam v. State, [supra,] 305 Ark. 438
[808 S.W.2d 738, 740]; see also State v. Berlat, [supra,] 146 Ariz. 505
[707 P.2d 303, 307] (due process and right to counsel extend to a juvenile's first appeal as of right). Thus, an attorney for an indigent juvenile adjudicated to be delinquent may file anAnders brief in the appellate courts of this state." (In reMay, supra, 569 S.E.2d at p. 707.)
 3. Anders applies to juvenile delinquency appeals
We must ascertain the precise impact of the federal due process guarantee with respect to appointed counsel on appeal in the juvenile delinquency context. As the United States Supreme Court noted in Lassiter v. Department of Social Services, supra,
452 U.S. at pages 24-25, (1) "Applying the Due Process Clause is . . . an uncertain enterprise which must discover what `fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." With respect to the assistance of counsel on a first appeal as of right, juvenile proceedings are not materially different in a constitutional sense from adult criminal matters; therefore, indigent juvenile delinquents, like adult defendants, have a Fourteenth Amendment right to appointed counsel on a first appeal as of right.
Relevant United States Supreme Court precedent has established that an adult convicted of criminal misconduct whose liberty interests are at stake, together with potential stigmatization, has a due process right, where a state grants an appeal, to full and effective appellate review. (See Pennsylvania v. Finley,supra, 481 U.S. at p. 557; Douglas v. California, supra,
372 U.S. at p. 357, fn. 2; Griffin v. Illinois, supra, 351 U.S. at pp. 18-19.) Further, in order to ensure that a state-created right to appeal is full and effective, an indigent criminal defendant has a due process right to appointed counsel on appeal. (Douglas v. California, supra, 372 U.S. at pp. 355-357.) The procedures set forth in Anders and Wende are intended to safeguard an indigent defendant's right to an adequate and effective appeal. (Smith v. Robbins, supra, 528 U.S. at p. 276;Anders v. California, supra, 386 U.S. at pp. 743-744; Peoplev. Wende, supra, 25 Cal.3d at pp. 439-442.) Moreover, the essentials of due process and fair treatment apply in juvenile delinquency matters. (Schall v. Martin, supra, 467 U.S. at p. 263; Santosky v. Kramer, supra, 455 U.S. at p. 766; In reWinship, supra, 397 U.S. at p. 359; In re Gault, supra,
387 U.S. at pp. 19-20.) This includes the right to counsel at the adjudication stage. (In re Gault, supra, 387 U.S. at pp. 34-41.) Further, the Fourteenth Amendment due process clause mandates that juvenile delinquency proceedings comport with fundamental fairness. (Breed v. Jones, supra, 421 U.S. at p. 531; Schall v. Martin, supra, 467 U.S. at p. 263.) *Page 118 
As the United States Supreme Court has recognized, the interests at stake in a juvenile delinquency proceeding parallel those at risk in a criminal prosecution. (Breed v. Jones,supra, 421 U.S. at p. 529; McKeiver v. Pennsylvania, supra,
403 U.S. at p. 540; In re Gault, supra, 387 U.S. at pp. 17-25, 36.) In a juvenile delinquency proceeding, a minor is accused of criminal conduct. (§ 602, subd. (a).) The delinquency proceeding carries with it the prospect of curtailed physical freedom for an extended period of time. In Winship and Gault, the United States Supreme Court observed that a proceeding subjecting a child to a loss of liberty for years is comparable in seriousness to a felony prosecution. (In re Winship, supra, 397 U.S. at pp. 365-366; In re Gault, supra, 387 U.S. at p. 36.) In Schall,
the court held that a juvenile's interest "in freedom from institutional restraints" was "undoubtedly substantial." (Schallv. Martin, supra, 467 U.S. at p. 265.) Further, the delinquency finding carries with it a stigma that may follow the minor throughout his or her life. In Gault, the United States Supreme Court emphasized that, contrary to historical notions, minors adjudicated delinquents are stigmatized by that finding. (Inre Gault, supra, 387 U.S. at pp. 17-25; see Addington v. Texas,supra, 441 U.S. at p. 427.)
Further, unlike the situation in Gault, which involved merely a delinquency adjudication, some juvenile cases involve potentially serious collateral consequences in the adult criminal judicial system. If a minor is adjudicated to have committed a violent or serious felony, depending on the circumstances, the ensuing disposition can be used to enhance an adult sentence including a potential life sentence. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12; § 707, subd. (b); People v. Garcia (1999)21 Cal.4th 1, 13-15 [87 Cal.Rptr.2d 114, 980 P.2d 829].) This amplifies the justification for including delinquency appeals within the Fourteenth Amendment list of rights available to both adults and minors.
Moreover, the Anders-Wende rights are materially different from the jury trial right, which is not typically available to juveniles, discussed by the plurality in McKeiver. TheMcKeiver plurality concluded that the jury trial right was not a "necessary component of accurate factfinding." (McKeiver v.Pennsylvania, supra, 403 U.S. at p. 543.) The McKeiver
plurality distinguished the jury trial right from the rights to "notice, counsel, confrontation, cross-examination," and the proof beyond a reasonable doubt standard, which involve "factfinding procedures." (Ibid.) The minor's need for the assistance of counsel, which the United States Supreme Court recognized in Gault, does not cease when the adjudication stage concludes. The need for accurate factfinding does not conclude with the adjudication proceedings. Further, the importance of ensuring the law is accurately and fairly applied does not cease once the adjudication proceeding concludes. The jury trial found to be constitutionally unnecessary in McKeiver is materially different from the right to counsel on appeal. Finally, providing effective assistance of counsel on *Page 119 
appeal to minors will not undermine the benefits flowing from the informality and flexibility of juvenile proceedings. McKeiver
is not controlling. The same analysis applies to Kent v.United States, supra, 383 U.S. at page 555, which held that in federal cases, there is no right to bail or being charged in an indictment.
(2) The very real risks of lost physical liberty and stigmatization have compelled the United States Supreme Court to extend the Fourteenth Amendment protections under many circumstances to criminal defendants and juveniles alike. TheFourteenth Amendment requires that the minor's one and only appeal as of right be full and effective. To safeguard the appeal right and ensure that juvenile delinquency adjudications are premised on accurate factfinding, the Fourteenth Amendment mandates that an indigent minor be appointed counsel on appeal. We are in accord with the courts that have directly decided the applicability of Anders to juvenile delinquency appeals. Given the Fourteenth Amendment right to counsel on appeal, the prophylactic rules in Anders and therefore Wende apply to delinquency appeals. (Smith v. Robbins, supra, 528 U.S. at p. 273; Pennsylvania v. Finley, supra, 481 U.S. at pp. 554-555.) When the minor's counsel was unable to discern any reasonably arguable contentions to present, she properly filed a Wende
brief in this matter.
4. The Attorney General's arguments
 II.A.4-II.B.*
....................................
B. The Minor Received Inadequate Predisposition Credits
....................................
 III. DISPOSITION
The juvenile court's January 27, 2003, dispositional order is modified to reflect 333 days of predisposition credit. In all other respects, the dispositional order is affirmed. On remand, the clerk of the juvenile court is to notify the probation department of the modification as to predisposition credits.
Armstrong, J., and Mosk, J., concurred.
[1] All further statutory references are to the Welfare and Institutions Code except where otherwise noted.
[2] Section 602, subdivision (a) provides, "[A]ny person who is under the age of 18 years when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than a ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."
[3] Section 726 allows, under specified circumstances, for the removal of a child from the physical custody of his or her parent or guardian and placement of the minor in physical confinement.
[4] Section 800, subdivision (a) states in pertinent part: "A judgment in a proceeding under Section 601 or 602 may be appealed from, by the minor, in the same manner as any final judgment, and any subsequent order may be appealed from, by the minor, as from an order after judgment."
[5] California Rules of Court, rule 1435(a) states: "In proceedings under section 601 or 602, the child may appeal from any judgment, order, or decree specified in section 800 and is entitled to court-appointed counsel. If the court determines that the parent or guardian can afford counsel but has not retained counsel for the child, the court shall appoint counsel for the child at the expense of the parent or guardian."
* See footnote, ante, page 97. *Page 120