Filed 7/7/14  In re Q.W. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Q.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Q.W.,<br><br>Defendant and Appellant. | F068610<br><br>(Super. Ct. No. 13CEJ600901-1)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  James Kelley, Judge.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Cornell, Acting P.J., Detjen, J. and Franson, J.

This case comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *In re Kevin S.* (2003) 113 Cal.App.4th 97, 119 (*Kevin S.*) (*Wende* review extended to a minor's first appeal in a delinquency case). Having reviewed the record as required by *Wende* and *Kevin S.*, we affirm the order.

We provide the following brief description of the facts and procedural history of the case. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

On November 8, 2013, a juvenile wardship petition was filed alleging that Q.W., a 16-year-old minor, came within the provisions of Welfare and Institutions Code section 602, subdivision (a), in that, on November 1, 2013, the minor violated Penal Code, section 496d, subdivision (a), receiving stolen property, a motor vehicle, and Penal Code section 148, subdivision (a)(1), resisting, delaying, or obstructing a peace officer.

The incident at issue involved a gray 2002 Suzuki Aerio owned by Rosemary Ortega. The car had a key stuck in the ignition, and Ortega used a spare key to lock the car. In late October of 2013, Ortega discovered that her car had been stolen.

At approximately 9:00 a.m. on November 1, 2013, California Highway Patrol (CHP) Investigator Chad Moran noticed the stolen car in the McLane High School parking lot. Moran and CHP Investigator Corben Whitney and other members of the auto theft prevention task force watched the car. At about 3:00 p.m., Q.W. and another minor, E.M., entered the car and E.M. drove the car from the school grounds. The car came to a stop on Archie Avenue near Home Avenue.

Whitney, driving an unmarked black Dodge Dakota truck, stopped behind the car, without activating his lights. Whitney had on a black t-shirt that displayed a prominent CHP insignia on the front and back. Fresno County Sheriff's Deputy Herzog parked his unmarked gray Chevy Traverse in front of the stolen car with his alert light activated. The lights included flashing LED lights on each corner of the vehicle, LED red and blue lights on a drop-down visor, and additional lights in the rear. Herzog had on a green

jersey with the word "Sheriff" on the back, a badge insignia on the front, and Fresno County Sheriff's Department patches on both sleeves.

Q.W. and E.M. exited the car and fled on foot. Moran, driving an unmarked gray Chevy Silverado, pursued Q.W. to the door of an apartment building and arrested him. Whitney and Herzog pursued E.M. on foot while yelling at him to stop for law enforcement. Whitney arrested E.M., who spontaneously stated, "I didn't steal that car." Whitney stated that he did not have his gun out until E.M. "was running back toward [him]" and E.M. reached for his waistband, but he was just pulling up his pants.

Moran drove Q.W. to the stolen car. After Moran gave Q.W. his *Miranda*[1] warnings, Q.W. explained that he ran from the car because he thought the person driving the gray Chevy Traverse might shoot him. According to Q.W., he had been friends with E.M. since they were in the fifth grade and E.M. had told him his uncle had given him the car. Moran questioned Q.W. further, stating that he thought he ran because he knew he was in a stolen vehicle. Q.W. lowered his head and responded, "yeah."

Q.W. testified in his own behalf that, on the morning of November 1, 2013, he took the bus to E.M.'s house. There E.M. told him he had bought the car; the two drove to school together in the car. According to Q.W., E.M. used a key he inserted into the ignition to operate the car.

When school was out, Q.W. and E.M. used the car to return to E.M.'s house to deliver tickets for a football game. But a truck pulled in front of them forcing E.M. to stop. Men emerged from the truck with guns and wearing civilian clothes. Q.W. ran because he feared someone might shoot him.

Q.W. testified that a person in a truck chased him towards an apartment building. After the pursuer got out of the truck and identified himself as a CHP officer, Q.W.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

obeyed his instructions. Q.W. told the officer he ran because he was afraid of getting shot. Q.W. also told the officer that E.M. had told him he had bought the car.

E.M., whose case was consolidated with Q.W.'s, testified in his own behalf that he had seen a listing for the car on Craigslist. The seller, an Asian man, sold him the car for $1,400 at an apartment building in Fresno. E.M. never bought a car before and did not know that a vehicle purchase required documentation.

E.M. ran from the car after he was pulled over because he was afraid of the men who had guns. He claimed to have complied with orders once he realized that law enforcement officers were pursuing him. When asked if he knew the car was stolen, E.M. told the officer he did not steal the car.

E.M.'s mother testified that she paid E.M. approximately $50 to $100 a week to work and run errands at their house. E.M. saved the money his mother gave him because she bought him everything he needed.

Following the jurisdictional hearing, the juvenile court sustained the allegations against Q.W.[2] At disposition, the juvenile court adjudged Q.W. a ward of the court and placed him on probation for one year in the custody of his grandmother, with conditions of electronic monitoring for up to 30 days and 75 hours of community service.

Q.W. appealed and we appointed counsel to represent him. Counsel filed an opening brief that set forth the facts of the case and requested this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra,* 25 Cal.3d 436; *Kevin S., supra,* 113 Cal.App.4th 97.) Q.W. was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days have elapsed, and we have received no communication from Q.W.

---

**2** As to E.M., the juvenile court sustained counts alleging auto theft (Veh. Code, § 10851, subd. (a)), receipt of stolen property, a motor vehicle (Pen. Code, § 496d, subd. (a)), and resisting, delaying or obstructing a peace officer (Pen. Code, § 148, subd. (a)(1)).

4.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to Q.W.

## DISPOSITION

The dispositional order is affirmed.