[No. F019602. Fifth Dist. Jan. 14, 1994.]

In re STEVEN F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
STEVEN F., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

## Counsel

Barbara Ewing Walker, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

BEST, P. J.—Steven F. appeals from an order adjudging him a ward of the juvenile court (Welf. & Inst. Code,[1] § 602) and committing him to the California Youth Authority (CYA) after he admitted to one count of robbery. He was also ordered, inter alia, to pay a restitution fine of $150 pursuant to section 730.6. He raises two contentions on appeal: (1) the court abused its discretion by committing him to CYA, and (2) the court erred by failing to consider his ability to pay the restitution fine.[2]

In the unpublished portion of this opinion we will affirm the CYA commitment. In the published portion, we will vacate the order imposing the restitution fine and remand for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

According to the probation report, 13-year-old[3] Steven approached 9-year-old Michael Carbajal as the latter was walking with his bicycle to the store. Steven took a knife from his pocket, partially unfolded the blade, and said: "Give me your bike vato or I am going to stab you. Look at my knife." Steven then grabbed the bicycle and rode away.

Michael reported the incident to his mother who reported it in turn to the police. Later that day, an officer saw Steven riding the bicycle in the same neighborhood and ordered him to stop. Steven continued riding with the officer in pursuit but soon abandoned the bicycle in an alley and was apprehended nearby. He was taken to juvenile hall and later released to his mother under home supervision. Steven explained he had taken the bicycle because his own had been stolen the week before.

A section 602 petition was filed charging Steven in count 1 with robbery (Pen. Code, § 212.5, subd. (b)) and in count 2 with resisting, delaying or

---

[1] All future statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] In *People v. McMahan* (1992) 3 Cal.App.4th 740, 750 [4 Cal.Rptr.2d 708], this court held that failure to object to the imposition of a fine which may be imposed only when the defendant has the ability to pay constitutes a waiver of the issue on appeal. For reasons that will appear, we do not apply that rule in this case.

[3] Steven was born April 15, 1979, and was thus about one week shy of his fourteenth birthday when the incident occurred on April 7, 1993.

obstructing a police officer (Pen. Code, § 148). The petition also alleged he had personally used a deadly or dangerous weapon in the commission of the robbery (Pen. Code, § 12022, subd. (b)). He subsequently admitted the robbery on the condition count 2 and the use allegation would be dismissed with a *Harvey*[4] waiver. Home supervision was continued.

About a week later, Steven was returned to juvenile hall for violation of home supervision after being suspended from school for participating in a paper towel fight.

In preparing her recommendations for the disposition hearing, the probation officer observed Steven had a poor school record; he had 21 unexcused absences, had failed several classes, and had been suspended once before for disruptive behavior. In addition, the officer described him as "defiant, physically threatening, intimidating, and destructive" at home toward his mother. For these reasons, the officer concluded Steven required close supervision of a sort not available locally at juvenile hall, Camp Erwin Owen, or a group or foster home. She therefore recommended he be committed to CYA where he could receive such supervision and could also participate in the variety of programs available there.

A separate observation report based on Steven's stay at juvenile hall noted he had been given seven restrictions during the period from March 26 through April 28, 1993. Under "Staff Comments" the report indicated "Steven is an immature ward who makes little effort to comply with the Juvenile Hall program. He is generally no problem but can escalate rapidly when he does not get his way."

At the conclusion of the disposition hearing, the court adopted the probation officer's recommendation, stating:

"THE COURT: All right. Well, I agree that it is not usual to send someone with this background to California Youth Authority but stepping back and looking at him and looking at the report and looking at the observation report, I am persuaded that that is the appropriate placement. First of all, although he is young, I don't think this is an unsophisticated crime; not only does it necessarily include a specific intent but the circumstances to me persuades me that he planned it apparently as a revenge or some kind of vindication or setting the record straight because his bike was stolen. And then to use the knife as he did to get the bike indicates to—the nine year old's bike indicates to me simply beyond an immaturity or impulse [*sic*].

"With regard to his maturity, the observation report alone is enough to show that he doesn't function in local custody well. Seven separate restrictions, and I haven't even talked about the fact that he was on home

---

[4]*People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

supervision and blew that. It may have been a paper towel fight but the point was, and the point remains that he wasn't even suppose [*sic*] to be involved in that. I think he is out of control at home. I think local custody makes simply no sense in light of his performance there. Camp requires a level of maturity, and that Steven doesn't have. I think he needs a highly structured setting with very little discretion in his movement.

"In light of all that I will be sending him to the California Youth Authority.

"I am finding the available confinement time is five years less 10 days credit for time served.

"I am finding that his welfare requires that his custody be taken from his mother and that local programs would be ineffective in his rehabilitation. I am satisfied that his mental and physical condition and qualifications are such as to render it possible—excuse me. Render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority."

DISCUSSION

I.  *CYA Commitment**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

II.  *Restitution Fine Pursuant to Section 730.6.*

Acting on a recommendation by the probation officer, the court ordered Steven "to pay a restitution fine under Section 730.6 in the amount of $150.00 in accordance with the condition to be established by the Youthful Offender Parol [*sic*] Board." Section 730.6 provides in part:

"(a)   When a minor is found to be a person described in Section 602, in addition to any other disposition authorized by law, the court shall levy a restitution fine which shall be deposited in the Restitution Fund, the proceeds of which shall be distributed pursuant to subdivision (b) of Section 13967 of the Government Code.

"(b)   The restitution fine imposed pursuant to this section shall be in the form of a penalty assessment in accordance with Section 1464 of the Penal Code. In addition, if the person is found to be a person described in Section

*See footnote, *ante*, page 1070.

602 by reason of the commission of one or more felony offenses, the court shall impose a separate and additional restitution fine of not less than one hundred dollars ($100), subject to the defendant's ability to pay, and not more than one thousand dollars ($1000). In setting the amount of the fine for felony offenses, the court shall consider any relevant factors including, but not limited to, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the minor as a result of the offense, and the extent to which others suffered losses as a result of the offense. The losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the offense.

"(c) The restitution fine shall be imposed in every case in which a minor is found to be a person described in Section 602. The restitution fine shall be in addition to any other disposition or fine imposed and shall be imposed regardless of the minor's present ability to pay. Except as provided in this section, under no circumstances shall the court fail to impose the separate and additional restitution fine in felony cases required by this section. This fine shall not be subject to penalty assessments pursuant to Section 1464 of the Penal Code. In a case in which the minor is a person described in Section 602 by reason of having committed a felony offense, if the court finds that there are compelling and extraordinary reasons, the court may waive imposition of the restitution fine. When a waiver is granted, the court shall state on the record all reasons supporting the waiver."

Steven contends the matter of the restitution fine must be remanded to the lower court because the court failed to consider his ability to pay it. The People respond section 730.6 mandates imposition of two separate restitution fines: one fine imposed under subdivision (a) on all minors coming within section 602; and a second, additional fine imposed under subdivision (b) on only those minors coming within section 602 by virtue of having committed one or more felonies. The amount of the latter fine, they contend, is subject to the minor's ability to pay; the amount of the former is not. Since the court failed to specify which of the two fines it was imposing, they reason it was the one required by subdivision (a), in which case no inquiry into Steven's ability to pay was necessary. However, they conclude the matter must be remanded for imposition (or waiver) of an additional fine pursuant to subdivision (b).

A. *Does Section 730.6 Refer to One or Two Restitution Fines?*

The fundamental goal of statutory interpretation is to "ascertain and effectuate legislative intent." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002,

1007 [239 Cal.Rptr. 656, 741 P.2d 154].) To determine intent, the court must look first to the words themselves. When the language is clear and unambiguous, statutory construction is unnecessary. (*Id.* at pp. 1007-1008.) However, when the intent is not clear from the statute itself, ". . . the provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].) "Of course, ' " 'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " ' [Citation.] In such circumstances, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134].)

Application of the above rules of statutory construction and a careful reading of section 730.6, together with section 730.5[5] and Penal Code section 1464, support the People's contention two separate restitution fines were intended but in a somewhat different manner. Section 730.6, subdivision (a) mandates the imposition of a restitution fine in every case "[w]hen a minor is found to be a person described in section 602." Section 730.6, subdivision (b) provides: "*In addition*, if the person is found to be a person described in Section 602 by reason of the commission of one or more felony offenses, the court shall impose a *separate and additional* restitution fine" subject to the minor's ability to pay. (Italics added.) Thus, subdivision (b) refers to a different fine than that mandated by subdivision (a). Subdivision (c), in turn, provides: "The restitution fine shall be imposed in every case in which a minor is found to be a person described in Section 602" and shall be imposed regardless of the minor's ability to pay. Clearly, this portion of subdivision (c) does not refer to the "separate and additional" felony restitution fine described in subdivision (b), which applies only to a subset of all minors coming within section 602 and does require consideration of the minor's ability to pay. Therefore, it must refer to the restitution fine described in subdivision (a) since that is the only one which may be imposed without regard to the minor's ability to pay.

■   A third factor also distinguishes the two restitution fines. The first sentence of section 730.6, subdivision (b) provides: "The restitution fine

---

[5]Section 730.5 permits the court to levy a fine against a minor coming within the provisions of section 602 "up to the amount that could be imposed on an adult for the same offense, if the court finds that the minor has the financial ability to pay the fine." Such fines are subject to the penalty assessment provisions of Penal Code section 1464. (§ 730.5.) However, restitution fines imposed on felony offenders pursuant to section 730.6, subdivision (b) are *not* subject to penalty assessments under Penal Code section 1464. (§ 730.6, subd. (c).)

imposed pursuant to this section shall be in the form of a penalty assessment in accordance with Section 1464 of the Penal Code." This language indicates a legislative intent that the restitution fine required by subdivision (a) is to be collected as a penalty assessment in accordance with Penal Code section 1464. Penal Code section 1464 requires assessment of a penalty "in an amount equal to ten dollars ($10) for every ten dollars ($10) or fraction thereof, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . ." Thus, the "restitution fine" referred to in the first sentence of subdivision (b) of section 730.6 is actually a penalty assessment, with the amount to be calculated according to the formula described in Penal Code section 1464. In order for such a calculation to be made, there must first be a fine imposed pursuant to section 730.5, which provides: "When a minor is adjudged a ward of the court on the ground that he or she is a person described in Section 602, in addition to any of the orders authorized by Section 726, 727, 730, or 731, the court may levy a fine against the minor up to the amount that could be imposed on an adult for the same offense, if the court finds that the minor has the financial ability to pay the fine. Section 1464 of the Penal Code applies to fines levied pursuant to this section." It necessarily follows that before the mandate of subdivision (a) of section 730.6 requiring the imposition of a "restitution fine" can become effective, a "fine" must first be imposed under section 730.5. Is the restitution fine required by subdivision (a) the same as the penalty assessment required by Penal Code section 1464 when a fine is imposed under section 730.5 or is it a separate and additional restitution fine? Giving effect to the plain language of section 730.6, we conclude the Legislature intended a separate and additional restitution fine equal to the penalty assessment levied on the underlying fine which would "be deposited in the Restitution Fund the proceeds of which shall be distributed pursuant to subdivision (b) of Section 13967 of the Government Code." (§ 730.6, subd. (a).)[6]

██   Thus, where a minor is found to be a person described in section 602 by reason of the commission of one or more felony offenses, the entire statutory scheme provides for the imposition of one "fine" plus penalty assessment (§ 730.5/Pen. Code, § 1464) which is conditional upon the minor's ability to pay the fine; one "restitution fine" equal to the amount of the penalty assessment which is not subject to the ability to pay (§ 730.6, subds. (a) & (c)); and one "restitution fine" of between $100 and $1,000 which is subject to the ability to pay (§ 730.6, subd. (b)). In the event a "fine" is not imposed under section 730.5, no "restitution fine" can be imposed under

---

[6]In so holding, we are aware the Attorney General in formal Opinion No. 87-105 dated July 28, 1987, interpreted similar language in Government Code section 13967 to not require the imposition of a pecuniary penalty in addition to the one required by Penal Code section 1464. (70 Ops.Cal.Atty.Gen. 172 (1987).)

subdivision (a) of section 730.6. However, a "restitution fine" must be imposed under subdivision (b) of section 730.6 where the minor has committed one or more felony offenses.

■ If the Legislature had intended the result advocated by the People, in every case where the minor has committed one or more felony offenses, subdivisions (a) and (c) of section 730.6 would mandate the imposition of a "restitution fine" unlimited as to amount and not subject to the minor's ability to pay. We cannot ascribe such an intention to the Legislature.

### B. Which Fine(s) Were Applicable in This Case?

Two questions remain: Was the court in this case required to impose one or both of the restitution fines called for by section 730.6? If only one, was the court required to consider Steven's ability to pay? The answer lies in the differing nature of the two fines.

It is clear from the language of section 730.6 that both fines are mandatory: ". . . the court *shall* levy a restitution fine . . ." (§ 730.6, subd. (a)); ". . . the court *shall* impose a separate and additional restitution fine . . ." (§ 730.6, subd. (b)). (Italics added.) However, as noted, the fine imposed on all minors pursuant to subdivision (a) is in reality a penalty assessment based upon the amount of a "fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . ." (Pen. Code, § 1464, subd. (a).) That is, the subdivision (a) "fine" supposes a separate fine, penalty, or forfeiture has already been imposed. Without such a fine or penalty there can be nothing upon which to base a penalty assessment. It follows that where, as here, there is no underlying fine or penalty, subdivision (a) does not apply. Moreover, if an underlying fine is imposed under section 730.5, that section by its terms requires the court to first find the minor has the ability to pay the fine and mandates levy of the penalty assessment pursuant to Penal Code section 1464. In such case, subdivision (a) of section 730.6 would mandate the imposition of an additional restitution fine equal to the penalty assessment already levied on the section 730.5 fine, which restitution fine would not be subject to the minor's ability to pay. This interpretation would give meaning to the first sentence of subdivision (b) of section 730.6 providing "The restitution fine imposed pursuant to this section shall be in the form of a penalty assessment in accordance with Section 1464 of the Penal Code."

That leaves subdivision (b). Here, Steven was found to be a person described in section 602 by reason of his having committed the felony of robbery. As a result, he was subject to the restitution fine mandated by subdivision (b). However, the restitution fine was imposed without any

discussion of his financial circumstances or a finding by the court of his ability to pay. Therefore, the matter must be remanded to the juvenile court so that it may consider Steven's ability to pay the fine, as well as any other relevant factors, or waive imposition of the fine in accordance with section 730.6, subdivision (c).

## DISPOSITION

The order committing Steven F. to the California Youth Authority is affirmed. The cause is remanded with directions to vacate the order imposing a restitution fine pursuant to section 730.6 and for reconsideration or further proceedings consistent with this opinion.

Martin, J., and Ardaiz, J., concurred.