[No. A071889. First Dist., Div. Three. Nov. 25, 1996.]

In re JIMMY P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JIMMY P., Defendant and Appellant.

**COUNSEL**

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, George F. Hindall and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PHELAN, P. J.—In this case we hold that our Supreme Court's decision in *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396] (*Harvey*), which precludes reliance upon the facts relating to charges dismissed as part of a plea bargain in reaching a sentencing decision, is inapplicable when a juvenile court determines the proper placement for a ward. We conclude the statutory scheme contemplates consideration of all available reliable, social and behavioral evidence bearing upon the minor's fitness in reaching the placement decision. Under that scheme, a minor can have no reasonable expectation that conduct underlying dismissed allegations will not be looked to as a factor in deciding the appropriate placement.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 1994, appellant admitted a charge of petty theft, was found to be a ward, and was placed with his mother with intervention to take place by "Families First." In June 1994, a supplemental petition charging appellant with robbery was sustained. He was then placed in a nine-month local "Boys Ranch" program.[1] While at the ranch, appellant "consistently refused to follow staff directions or adhere to program guidelines." He was returned to court and given ". . . one additional opportunity in a group home placement." He was sent to St. John's School For Boys in Southern California on May 31, 1995. On July 17, 1995, a fifth supplemental petition was filed under Welfare and Institutions Code section 777, alleging the disposition was ineffective. Specifically, the petition alleged: "On or about July 14, 1995, he was terminated and removed from the St. John's School For Boys facility . . . [and] said minor is beyond control necessitating his detention pending further case planning." On July 21, 1995, appellant admitted the third allegation under count 1 of the fifth supplemental petition, "AWOL from the facility." The other four allegations in numbered paragraphs were to be stricken.[2]

At a contested disposition hearing on August 24, 1995, appellant testified, in apparent explanation of why he went "AWOL," that he was continuously harassed and repeatedly assaulted by Southern California gang members during the month and half he was at St. John's home. He claimed the staff did not care and would do nothing about it. They refused to transfer him to another unit. He testified that, on the day he left St. John's, he "wasn't

---

[1]We affirmed the wardship and placement orders in this case in an unpublished opinion, *In re Jimmy P.*, No. A067846, filed May 23, 1995.

[2]The record fails affirmatively to disclose whether that was done although the allegations which were to have been stricken are crossed out on the petition, and the minute order states that the petition was "amended on its face."

clicking very right," and left because he was "having too many problems . . . ." He also testified he needed help with his drug and alcohol problem.

Appellant's mother testified that he was not a "real problem" for her and was not out of her control. She stated his problems began at age 14 when he started ". . . hanging around with a group of boys that didn't have money and their lifestyle was to go out and get it the best way they could." She welcomed him back in her home, but wanted "[w]hatever is causing him to go in this pathway, I want that dealt with." She, too, wanted appellant to get drug and alcohol counseling.

At the close of the hearing, the juvenile court noted that appellant was "extremely difficult to place." After commenting the court had received positive reports concerning the program at St. John's, the court focused on the termination report from that facility which had been incorporated in the probation officer's report. The court read an excerpt from the termination report concerning appellant's fighting, assaultive behavior toward staff and refusal to comply with the norms of conduct mandated by the facility. The court also commented on appellant's conduct at the disposition hearing, noting that it had "an idea what the problems are with Mr. [P.]'s behavior . . . ." since he was "sitting in court smiling . . . like this was a joke [and] just not a serious thing" while his attorney was questioning the probation officer. The court concluded that there were no other local, less restrictive programs available which would change appellant's behavior and committed him to the California Youth Authority.

## DISCUSSION

■ Appellant argues that, in selecting placement in the California Youth Authority, the juvenile court improperly considered facts relating to allegations which were dismissed. He contends that without a *"Harvey"* waiver,[3] the court could not weigh those circumstances in its dispositional decision. As noted at the outset of this opinion, we do not agree.

The fifth supplemental petition brought under Welfare and Institutions Code section 777[4] alleged: "Jimmy [P.], a minor, having been declared a Ward by order of the Juvenile Court on [M]arch 22, 1994, did violate the provision of said order by the following acts or omissions: [¶] On or about July 14, 1995, he was terminated and removed from the St. John's School For Boys facility for: [¶] 1. fighting [¶] 2. refusal to comply with facility

---

[3]*Harvey, supra,* 25 Cal.3d at pages 758-759; *People* v. *Goulart* (1990) 224 Cal.App.3d 71, 80 [273 Cal.Rptr. 477].

[4]All further unspecified statutory references are to the Welfare and Institutions Code.

norms [¶] 3. AWOL from the facility [¶] 4. inciting others to AWOL [¶] 5. attempting to incite gang related incidents." On July 21, 1995, appellant's attorney announced: "Jimmy is willing to admit the petition as to the third allegation, if the Court is willing to strike one, two, four and five, those allegations under Count I. He is willing to admit that he went AWOL from the facility." After eliciting waivers of constitutional rights, the referee took appellant's admission as follows: "Okay. The petition, as amended, alleges that you violated the terms of your probation in that on or about July 14th, 1995, you were terminated and removed from St. John's School for Boys for being AWOL from the facility. [¶] Is that true?" Appellant answered "Yes."

Appellant's claim of *Harvey* error relates to the court's explanation of its intended Youth Authority disposition. As noted, the court read the probation officer's quote from the termination report received from St. John's as follows: "From the time of his initial arrival at the facility, Jimmy consistently demonstrated extremely negative behavior in the areas of total and aggressive disrespect of staff personnel, fighting with peers, attacking peers from the rear, consistently attempting to insight [*sic*] peers to negative actions by telling them 'We're G's men, we don't have to do anything they tell us'—negatively manipulating staff, physically assaultive behavior towards staff, viciously kicking staff in the leg after throwing food at the staff, displaying extremely animated, violent, enraged behavior toward staff members, whenever confronted about lack of [n]ormal compliance, refusing to demonstrate any desire to follow or obey lawfully established norms mandated by the facility or the conditions of his probation; and, finally, AWOL from the facility."[5] Appellant argues that consideration of these factors requires reversal.

In juvenile wardship cases such as this, we conclude the *Harvey* rule is inapplicable. That rule is based upon the reasonable expectations of a defendant who enters into a negotiated plea whereby charges are dismissed. (*People* v. *Franco* (1986) 181 Cal.App.3d 342, 349 [226 Cal.Rptr. 280].) As one court put it, "The trial court cannot with one hand give a benefit and with the other take it away." (*People* v. *Klaess* (1982) 129 Cal.App.3d 820, 823 [181 Cal.Rptr. 355].) But the *Harvey* opinion also makes it clear that the rule must yield when its application would prevent a court from considering all of the factors necessary to make an informed disposition of the admitted charge or charges. (*Harvey*, *supra*, 25 Cal.3d at p. 758; *People* v. *Franco*, *supra*, 181 Cal.App.3d at p. 350; *People* v. *Klaess*, *supra*, 129 Cal.App.3d at p. 823.) Thus, in *People* v. *Bustamante* (1992) 7 Cal.App.4th 722 [9 Cal.Rptr.2d 244], this court held that, where a defendant entered a plea to

---

[5]We observe there was no mention of facts relating to the allegation that appellant incited others to go "AWOL."

one count of child molestation pursuant to an agreement requiring dismissal of two other incidents of molestation, the *Harvey* rule was inapplicable. We concluded that, because the provisions of Penal Code section 288.1 required a court to obtain a report from a reputable mental health expert or program as to the mental condition of the defendant before granting probation, there could be no reasonable expectation that dismissed charges would not be considered in deciding whether to grant probation. (*People* v. *Bustamante,* *supra,* 7 Cal.App.4th at pp. 725-726.) Similarly, in the case of a juvenile ward, statutory mandates and good sense require consideration of all relevant circumstances when deciding the level of restriction to be imposed, even those related to dismissed allegations.

A fundamental premise of delinquency adjudication is that the court must focus on the dual concerns of the best interests of the minor and public protection. Section 202 provides: "(a) The purpose of this chapter is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. . . . [¶] (b) . . . Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance which is consistent with their best interest, which holds them accountable for their behavior, and which is appropriate for their circumstances. . . . [¶] . . . [¶] (d) Juvenile courts and other public agencies charged with enforcing, interpreting, and administering the juvenile court law shall consider the safety and protection of the public and the best interests of the minor in all deliberations pursuant to this chapter." In terms of the information to be considered in arriving at a disposition, the juvenile court is mandated to consider the broadest range of information available. Section 706 provides that after a wardship finding is made, ". . . the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer and any other relevant and material evidence that may be offered . . . ." (See also § 725.5; Cal. Rules of Court, rule 1492.) Finally, with respect to a commitment to the Youth Authority, the court must be "fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority." (§ 734.) These statutory mandates make clear that the broadest range of information pertinent to the ward, especially his past behavior and performance while a ward, must be considered and evaluated in deciding the level of "physical confinement" to be imposed

pursuant to section 726. In light of these requirements, there can be no reasonable expectation that the juvenile court would not look at conduct related to dismissed allegations in determining the proper placement of a ward.[6]

Additionally, the circumstances of this case make it clear that appellant in fact had no reasonable expectation that the court would not consider the circumstances of his fighting, involvement with gangs, and his failure to comply with the norms of conduct at St. John's School For Boys. As we have noted, he testified at his disposition hearing. He expressly dealt with all three factors and explained his version of his conduct at St. John's. He blamed the fighting on the Southern California gang members belonging to the "Crips" and "Bloods." He claimed he participated in programs at the school as well as in work assignments. He complained that staff harassed him.[7] ▀▀ In light of this testimony, appellant had no reasonable expectation that the court would not look at the report from St. John's describing the reasons for his termination there.[8]

Appellant's sweeping claim that "it is generally assumed that [the *Harvey*] doctrine applies to juvenile cases . . ." does not hold up. The cases he cites do not go nearly that far. In two of them, the opinions simply note that there was a *Harvey* waiver taken as to dismissed counts. (*In re Steven F.* (1994) 21 Cal.App.4th 1070, 1074, fn. 4 [26 Cal.Rptr.2d 604]; *In re Devin J.* (1984) 155 Cal.App.3d 1096, 1098, fn. 2 [202 Cal.Rptr. 543].) Neither case discussed whether such a waiver was required before the juvenile court may consider facts related to dismissed allegations when determining the proper placement for a ward. Significantly, the case of *In re Raymond B.* (1981) 121 Cal.App.3d 785 [175 Cal.Rptr. 359] (*Raymond B.*), cited by appellant, rejects application of the *Harvey* rule to placement decisions for juvenile offenders.

---

[6]We do not imply that the *Harvey* rule is inapplicable to the calculation of the maximum period of confinement under section 726. That section expressly requires that sentencing rules relating to adults be observed in making that calculation.

[7]The juvenile court expressly found appellant "not [to be] a very credible witness."

[8]We also believe the sentencing error waiver rule of *People* v. *Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040], bars appellant's claim of *Harvey* error. In that case the Supreme Court held that, where there has been a meaningful opportunity to do so, a defendant who fails to object to a court's failure to state reasons for a sentencing choice cannot raise the claim for the first time on appeal. (*People* v. *Scott, supra,* at p. 356.) A meaningful opportunity to object simply means that counsel has the opportunity to address the court on the sentencing issue involved. (*People* v. *Zuniga* (1996) 46 Cal.App.4th 81, 84 [53 Cal.Rptr.2d 557].) Here, appellant's attorney had an ample opportunity to assert a *Harvey* objection when the court read from references in the probation officer's report to fighting, assaults on staff members, and compliance with facility norms. None was interposed and the contention cannot be presented for the first time on appeal.

In *Raymond B.*, the court concluded: "Assuming that the trial court took into account appellant's string of burglaries in determining that camp community placement was the proper disposition, the court acted entirely properly in doing so. The court was required to consider the probation officer's report and appellant's entire social history. [Citations.] This case is not like *People v. Harvey* (1979) 25 Cal.3d 754, 758 . . . . In *Harvey* the defendant pleaded guilty to two counts of robbery in exchange for dismissal of a third unrelated robbery. The trial court, however, sentenced the defendant to an *upper prison term* based upon the facts of the dismissed count. Here, on the other hand, appellant's maximum period of possible confinement was governed by the two counts which were found true, not the dismissed counts. In light of appellant's history, the court had virtually no choice but to remove him from his existing placement." (*Raymond B., supra,* 121 Cal.App.3d at p. 789, italics in original.)[9]

▇▇▇ In light of the statutory scheme and *Raymond B.*, we conclude the court, in making its placement decision, properly relied upon the circumstances related to allegations which had been dismissed.

### DISPOSITION

The order committing appellant to the California Youth Authority is affirmed.

Parrilli, J., and Walker, J., concurred.

---

[9]We also note that it has been held that suppressed evidence which was obtained in violation of the Fourth Amendment may be considered at the disposition phase of a wardship proceeding. (*In re Michael V.* (1986) 178 Cal.App.3d 159, 173 [223 Cal.Rptr. 503].)