Filed 3/6/13  In re K.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K. H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E056234 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J239660 & RIJ1100008) |
| v. | |
| K. H., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Thomas S. Garza, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Melissa Mandel and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, K. H. (the minor), challenges the placement order made by the juvenile court following a dispositional hearing held on March 16, 2012. He argues the court's decision to remove him from his mother's custody and place him in foster care was an abuse of discretion. As discussed below, we find the court did not abuse its discretion.

FACTS AND PROCEDURE

*First Petition—January 2011*

On December 29, 2010, the minor and several other youths robbed a pizza delivery person at knifepoint. Another youth pointed a knife at the victim and took a small amount of cash from his person. The minor and other youths took pizzas and other food items from the trunk of the victim's car.

On January 4, 2011, the People filed a petition in the Riverside County Juvenile Court, alleging the minor had committed robbery (Pen. Code, § 211) and possessed stolen property (Pen. Code, § 496, subd. (a)).[1]

---

[1] Also on January 4, 2011, the probation office received a referral on the minor for misdemeanor possession of marijuana (Health & Saf. Code, § 11357, subd. (b)) and the purchase of tobacco by a minor (Pen. Code, § 308, subd. (b)). The district attorney returned the matter to the probation department, instructing it to handle the matter along with the robbery case.

When interviewed by the probation officer, the minor's mother maintained that his friends were a positive influence on him, including two who participated with the minor in this robbery, one of which was his best friend. Regarding this boy, mother stated: "'They are like brothers!'" The probation officer reported: "When advised that most of [the minor's] friends are on probation, she stated, 'I know some of them have been bad in the past, but they are all good kids. They are all very respectful to me.'" The minor had been diagnosed as learning disabled and participated in an individual educational plan meeting in January 2009, at which time his reading, writing, and math scores were at the 5th grade level. For the current school year, defendant already had 49 unexcused absences and 29 excused absences for being "sick." He had numerous behavioral referrals and disciplinary actions stemming from sexual harassment, defiance/disrespect to staff, dress code violations, assaulting other students, and using foul language. The minor regularly smoked cigarettes and marijuana, regularly abused prescription drugs, and regularly consumed alcohol. He was hospitalized in 2010 for overdosing on prescription pills. Mother was aware of the minor's substance abuse in the past, but claimed to be surprised that he was currently using. Mother was also skeptical as to whether the minor had participated in the robbery at all. The probation officer questioned whether placing the minor with his mother would be productive because of the minor's "belief that he can do whatever he wants, whenever he wants," and mother's "lack of parental control and discipline" and denial regarding her son's behavior. However, the

3

probation officer concluded that the minor deserved "one chance on probation while remaining in his home."

On January 20, 2011, the minor admitted both allegations and was declared a ward of the court. The court sentenced the minor to the 21 days of custody he had already served and placed him with his mother.

*Probation Violation—April 2011*

On April 15, the minor's probation officer filed a petition alleging the minor had violated his probation by (1) being arrested for shoplifting (Pen. Code, § 490.5) on February 14, 2011, and (2) being in the presence of one of his codefendants in the robbery. On April 20, 2011, the minor admitted the allegations. The juvenile court sentenced him to 20 to 40 days in custody and again placed him with his mother on probation.

*Subsequent Petition and Transfer—May/June 2011*

On May 5, 2011, the People filed a subsequent petition alleging the minor committed felony evading police (Veh. Code, § 2800.2) and reckless driving (Veh. Code, § 23103, subd. (a)). On March 15, 2011, the minor drove recklessly and failed to stop when a law enforcement vehicle activated its lights and siren. On June 20, 2011, the minor admitted the allegation that he evaded police. The court continued the minor in his mother's custody and transferred the matter to San Bernardino County, where the minor's mother had moved, for disposition. The court also dismissed the reckless driving charge. On June 30, 2011, the San Bernardino County Juvenile Court accepted the case. At the

further transfer-in hearing held on August 12, 2011, the court continued the minor on probation in his mother's custody.

*Probation Violation—March 2012*

On March 7, 2012, the minor's probation officer filed a petition alleging the minor had violated his probation by failing to perform the following terms of his probation: (1) perform community service; (2) attend anger management classes; (3) report to his probation officer as scheduled; and (4) attend school. On March 9, 2012, the juvenile court issued a warrant for the minor's arrest based on his failure to report to his probation officer after January 17, 2012. At the detention hearing held on March 21, 2012, the minor admitted to not attending school. The People dismissed the remaining allegations but the parties stipulated they could be considered for disposition and restitution purposes. The minor was continued in placement at juvenile hall. At the contested dispositional hearing held on April 16, 2012, the court heard testimony from the probation officer and from the minor's mother. After hearing argument from counsel, the court found that the minor's needs were not being met in his mother's home and ordered him placed in foster care. This appeal followed.

## DISCUSSION

We review a juvenile court's dispositional order for abuse of discretion, indulging all reasonable inferences to support its decision. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) The minor argues the court abused its discretion in removing him from his mother's custody and placing him in foster care.

5

In determining placement in a juvenile delinquency case, the court focuses on the dual concerns of the best interests of the minor and the need to protect the public.  (*In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1684.)  The 1984 amendments to the juvenile court law reflected an increased emphasis on punishment as a tool of rehabilitation, and a concern for the protection and safety of the public.  (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396.)  Since retribution must not be the sole reason for punishment, there must be evidence demonstrating probable benefit to the minor and the inappropriateness or ineffectiveness of the less restrictive alternatives.  (*Ibid.*; *In re Angela M., supra,* 111 Cal.App.4th at p. 1396.)

The minor specifically argues that he does not merit placement because his most serious offense, robbery, was committed back in December of 2010, and his offenses did not become more serious over time.  He also points out that the juvenile court misspoke when it stated at the dispositional hearing that the minor had participated in *two* felony robberies and argues the court mischaracterized his "drug issues" as current rather than in the past.  Finally, the minor characterizes his probation violations as "technical" only, and faults the court for improperly emphasizing his lack of school attendance and de-emphasizing his decision to work part-time in the construction industry.

Regarding the minor's offenses, we agree that his most serious offense, robbery, along with felony possession of stolen goods, took place prior to the wardship, and was in fact its cause.  However, the minor ignores the fact that he was arrested for shoplifting only three weeks after the beginning of his wardship, and for reckless driving and felony

6

evading a police officer only a month after the shoplifting. The minor did refrain from getting arrested for the next year leading up to the dispositional order he challenges here. However, he also overlooks that he did not attend a single day of school during the 2011-2012 school year, did not attend *any* anger management classes or perform *any* community service, and actively evaded meeting with his probation officer over a number of months. While none of these failures is, on the surface, as serious as robbing a person at knifepoint, the minor has shown by his actions that the less restrictive alternative of placement with his mother has been utterly ineffective in rehabilitating him. The proposed placement is of probable benefit to the minor because it would provide him the structure and discipline that he has sorely lacked at home, especially with regard to obtaining an education.

Regarding the juvenile court's incorrect statement that the minor had participated in "two felony robberies" rather than just one, we agree with the People that this misstatement does not make the entire disposition an abuse of discretion or lacking in justification. This is because, although the minor participated in only one felony robbery, he was actually convicted of *three* felonies—robbery, receiving stolen property, and evading a police officer—which adequately demonstrates the minor's danger to public safety just as would two felony robberies. Similarly, although the probation officer testified that the minor was producing clean drug tests, thus showing that the juvenile court was mistaken as to the minor's current drug use, the record contains more than enough evidence to support the dispositional order, in the form of the minor's complete

7

lack of ability to conform with the most simple requirements of probation while in his mother's care.

The minor characterizes his probation violations as merely "technical" and argues that these should be outweighed by the fact that he is working part-time. Again, the minor did not merely miss a few days of school—he completely failed to attend during the then-current school year at all. Similarly, with the anger management and community service requirements, the minor completed *none* of these requirements. Further, the probation officer testified that, prior to missing *all* appointments after January 17, 2012, the minor also failed to appear for his appointments on October 18 and November 15, 2011. Thus, these violations were not merely "technical," but are extensive and intentional. This behavior, while on probation in the custody of his mother, is consistent with the depiction of the minor provided by the probation officer for the minor's very first Welfare and Institutions Code section 602 petition after the 2010 robbery, that the minor has the "belief that he can do whatever he wants, whenever he wants," which is exacerbated by his mother's "lack of parental control and discipline." We also note that the probation officer opined that the minor deserved "*one* chance on probation while remaining in his home," whereas he subsequently received more than one chance. Although mother testified at the dispositional hearing that she was capable of providing educational and other support for the minor if he could be continued in her custody, she had told the probation officer during an interview on January 31, 2012, that the minor refused to attend school, that he came and went as he pleased, and that she had lost

8

control of him.  The minor is to be commended for working part-time, but this in no way compensates for his otherwise complete lack of effort and self-control in complying with the very plain terms of his probation.

In sum, the record is replete with support for the juvenile court's dispositional order removing the minor from his mother's custody and placing him in foster care. Thus, the court did not abuse its discretion.

## DISPOSITION

The juvenile court's dispositional orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
<br>P. J.

We concur:

RICHLI
<br>J.

MILLER
<br>J.

9