Filed 3/24/16  In re E.S. CA3
Received for posting 3/25/16

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re E.S., a Person Coming Under the Juvenile Court Law. | C080035 |
| THE PEOPLE, | (Super. Ct. No. JV136455) |
| Plaintiff and Respondent, | |
| v. | |
| E.S., | |
| Defendant and Appellant. | |

This appeal comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *In re Kevin S.* (2003) 113 Cal.App.4th 97.

## I.  BACKGROUND

An amended juvenile wardship petition (Welf. & Inst. Code, § 602) filed on September 24, 2014, charged 16-year-old minor E.S. with 12 felonies:  first degree

1

robbery (count 1; Pen. Code, § 212.5, subd. (a))[1]; preventing or dissuading a witness or victim (Elijah G.) from testifying (count 2; § 136.1, subd. (c)(1)); preventing or dissuading a witness or victim (Devon D.) from testifying (count 3; § 136.1, subd. (c)(1)); making a criminal threat to Devon D. (count 4; § 422); making a criminal threat to Elijah G. (count 5; § 422); robbery of Christian W. (count 6; § 211); receiving stolen property (count 7; § 496, subd. (a)); robbery of Zach G. (count 8; § 211); robbery of David D. (count 9; § 211); making a criminal threat to Zach G. (count 10; § 422); making a criminal threat to David D. (count 11; § 422); and burglary of an inhabited dwelling occupied by Brooklyn W. (count 12; § 459). All offenses were alleged to have occurred on our about July, 30, 2014, and July 31, 2014.

As to count 1, it was alleged pursuant to section 213, subdivision (a)(1)(A), that the minor committed the offense voluntarily, acted in concert, and entered a structure described in that section. As to counts 2, 3, 6, 8, 9, and 12, it was alleged that the offenses were serious felonies (§ 1192.7, subd. (c)).

On September 25, 2014, the juvenile court found a prima facie showing had been made that the minor was a person described by Welfare and Institutions code section 602 and ordered him detained in juvenile hall.

On October 14, 2014, probation recommended that the minor be adjudged a ward of the court and committed to 120 days in juvenile hall, followed by 120 days on electronic monitoring under his parents' supervision, plus the completion of 18 days in Juvenile Work Project.

On December 5, 2014, the juvenile court directed probation to refer the minor to the Interagency Management and Authorization Committee (IMAC) to perform a level B evaluation and submit a report on it.

---

[1] Undesignated statutory references are to the Penal Code.

On January 5, 2015, probation informed the juvenile court that IMAC had recommended returning the minor home and placing him on electronic monitoring for 120 days. IMAC based this recommendation on the minor's lack of prior history with the juvenile court, the minor's parents' claim that the charged conduct was atypical, and their assertion that they would work closely with the minor and in-home services to redirect him.

On June 26, 2015, pursuant to a plea agreement, the minor admitted count 1 and the associated enhancement (§ 213, subd. (a)(1)(A)), and the prosecution moved to dismiss the remaining counts with the understanding that they could be considered at disposition. The agreement included a commitment to the Department of Juvenile Justice (DJJ) for up to nine years.

After finding the minor entered the plea freely and voluntarily, the juvenile court found there was a factual basis for the admission, accepted the admission, and sustained the petition as to count 1. The court stated that the agreement was acceptable "given all the facts and circumstances, the proof available, the risks involved to the defense, potential consequences."

To explain why it accepted the agreement, despite the more lenient proposals by probation and IMAC, the court stated: "This was a home invasion robbery, and it's an incredibly serious offense. This may be your first time through. But you hit a home run your first time at bat. You really did. That's why you're getting this disposition. [¶] There are a number of counts here. It could have been longer." The court also noted that if the prosecution had taken the case to adult court, 11 of the offenses could have been charged as strikes, with a maximum exposure of 18 years in state prison.

The factual basis for the plea to count 1, as stipulated to by the parties, was as follows: "[I]n the County of Sacramento on or about July 31st, 2014[,] the minor entered the residence of Elijah T.[*sic*] and Devon D. and while [*sic*] acted in concert with two other minors who forced their way into the residence, the minor wil[l]fully and

unlawfully took the property of the victims from their possession and immediate presence and against their will by using force and fear specifically by punching and kicking one victim multiple times, threatening the victims and forcing each victim to stay in different rooms while the home invasion robbery was taking place."

According to the probation reports, on July 31, 2014, Elijah G. and Devon D. were at Elijah G.'s home around 8:00 p.m. Elijah G. heard a knock on the door, looked through the peephole, and saw the minor, whom he recognized from school. As Elijah G. opened the door, two accomplices (A.C. and S.C.) came in behind the minor, concealing their faces. The minor punched Elijah G. in the face and pushed him into the kitchen, while the other two fought with Devon D. All three punched and kicked Elijah G. multiple times while he was on the ground. The minor then made Elijah G. sit on the toilet in the bathroom and made Devon D. sit on the couch for 15 minutes, while the three assailants went through the home taking things. Elijah G. and Devon D. recognized all three, because all of the minors used to be in a gang together; Elijah G. and Devon D. had dropped out because the minor was turning it from a friendly association into a "criminal thing." (Counts 1-5.)

According to Devon D., earlier that day the minor, A.C., and S.C. were hanging out at Devon D.'s house. As they left the house, they saw Christian W., another acquaintance from school, riding his bicycle. The minor told A.C. and S.C. to take the bicycle. They ran over and punched Christian W. until he fell off the bike. The minor ordered him to give up the bike. The minor also took Christian W.'s belt and wallet, but threw the wallet back because it had no money in it. (Counts 6-7.)

On the same evening, police were dispatched to a different residence about a burglary in which the suspect had broken a window to obtain entry. The victim reported several items missing. A latent print taken from the outside of the bedroom window matched that of the minor, then in custody for the offenses against Elijah G. and

4

Devon D. The victim, was shown a picture of the minor, said he did not know the minor and the minor did not have permission to be in his house. (Count 12.)

Apparently, on July 30, 2014, the minor also stole one or more bicycles from Zach G. and David D. (Counts 8-11.)

The juvenile court declared the minor a ward of the court and committed him to Division of Juvenile Justice (DJJ) for a maximum term of seven years, not to exceed the statutory limitation for commitment to age 23. The court found the sustained offense to be a crime listed in Welfare and Institutions code section 707, subdivision (b). The court awarded the minor 330 days credit for time served in juvenile hall, imposed a restitution fine of $100 (Welf. & Inst. Code, §§ 730.6, subd. (b), 730.7, subd. (a)), ordered victim restitution in amounts to be determined, and set a hearing to determine victim restitution.

We appointed counsel to represent the minor on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) The minor was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief.

The minor filed a supplemental brief, raising contentions that attack almost every aspect of the juvenile court's ruling. Most are forfeited by the minor's free and voluntary entry of a plea that admitted count 1 and the associated in-concert allegation and allowed the juvenile court to consider the remaining charges at disposition. The rest fail because they assert alleged facts outside the record or legal propositions unsupported by authority.

## II. DISCUSSION

The minor asserts that as to count 1, he was not the "leader"; due to his diagnosed ADD and cognitive delay, as shown by his psychological evaluations, he was not capable of a high level of organizing and planning; he did not go to the victim's house intending to cause great bodily injury and did not do so; he did not force his way into the house; he

5

did not have any weapons; and Devon D. was not really a victim, but the one who actually planned the offense. So far as these claims are material, they are forfeited.

The minor freely and voluntarily admitted that the allegation of count 1 was true. In return, he received a substantially more lenient disposition than might have occurred had he chosen to stand trial on all counts, or had the matter been transferred to adult court. Having chosen not to dispute count 1 in the juvenile court, he may not do so now. In other words, having gotten the benefit of his bargain, the minor may not try to improve on it on appeal. (*In re Giovanni M.* (2000) 81 Cal.App.4th 1061, 1065 (*Giovanni M.*).) In any event, the minor cites no evidence in the record supporting his factual claims. Finally, the evidence contained in the probation reports points overwhelmingly to his culpability, not merely on count 1 but on all the alleged counts, and the juvenile court could properly also consider the dismissed counts in determining the appropriate disposition. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329; *In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1684.)

The minor asserts that the police lacked probable cause to enter his home at 2:00 a.m. on the basis of a probation search warrant in order to arrest him. The minor's plea forfeits any challenge to the validity of the warrant or the police entry into his home. As with the minor's previous contention, he cites no evidence in the record to support his factual claims. Finally, we note that the minor's counsel apparently saw no grounds on which to contest the validity of the warrant or the entry.

The minor claims he could not discuss any of these issues in the trial court because he was told he could face 18 years in prison with 11 strike priors, even though he had never been convicted of anything before. As with the minor's prior assertions, his free and voluntary entry into a plea, which gave him a far more lenient disposition than the maximum possible punishment for his crimes, forfeits his complaint. (*Giovanni M., supra*, 81 Cal.App.4th at p. 1064.) His lack of prior convictions does not mean he could not have received that 18-year sentence if tried and convicted on all counts in adult court.

6

The minor complains that his parents have not been allowed to take part in his case counseling reviews. Since this complaint does not go to the validity of the disposition order, we need not consider it.

The minor asserts that the latest assessment of his suitability for DJJ was done in August 2014, almost a year before the disposition date, and claims he should have been reassessed before commitment to DJJ. However, by entering a plea which included a mandatory DJJ commitment, he forfeited any right he might have had to a more recent assessment.

The minor cites the recommendations for a more lenient disposition made by probation and IMAC, then asserts: "The Judge failed to exercise discretion when committing me to DJJ for 7 years." On the contrary, the court explained why it exercised its discretion to reject those recommendations. Having told the minor on the record that his offense was "incredibly serious" and that "you hit a home run your first time at bat," the court did not need to say any more to explain its rejection of proposed dispositions that amounted to no more than a slap on the wrist. In any event, if the minor was dissatisfied with the court's intended disposition, he could have withdrawn his plea and stood trial. Having received the benefit of his bargain, he may not complain about it now. (*Giovanni M., supra*, 81 Cal.App.4th at p. 1064.)

Under the same heading, the minor asserts: "DJJs should be the last resort for repeat offenders." So far as this is meant to be a statement of the law, it is incorrect: the juvenile court may choose DJJ without having previously tried less restrictive commitments. (*In re Eddie M.* (2003) 31 Cal.4th 480, 507; *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.)

The minor asserts that the juvenile court's power to consider the dismissed allegations at disposition was not originally part of the plea agreement, as shown by his counsel's statement that he did not recall that condition. Since the minor entered his plea

7

after the court's power to consider the dismissed allegations was clearly explained to him on the record, what the minor's counsel recalled is irrelevant.

The minor asserts that the juvenile court failed to allow for any discussion in court about available alternative placements, such as "out of state placement." The minor cites no authority for the proposition that a placement less restrictive than DJJ was available after his admission of first degree robbery. In any event, his entry of a plea conditioned on DJJ commitment forfeits this claim.

The minor asserts it was unclear what length of DJJ commitment he was accepting: According to him, he thought it was three years, and no one mentioned seven or nine years before the date when he entered his plea in open court. He also asserts that he has "a legal document from Don Masuda [his former counsel] that states initially, the DA was asking for two years." There is no such document in the record. But even if there were, initial offers from the prosecution that the minor did not accept were not binding on the prosecutor. Finally, what the minor may have previously thought he would get is not material since the prosecutor stated in open court the plea entailed a DJJ commitment of up to nine years and the minor accepted the deal with the agreement of his counsel.

The minor asserts that the juvenile court did not consult with the psychiatrist at the juvenile hall clinic "to even determine the nature of my situation according to the WIC as stated by the Judge on p. 68." However, the minor cites no authority holding that the court was obliged to do so.

The minor also asserts that he was on medication "that contributed to behavior issues in the juvenile hall." Nothing in the record supports this attempt by the minor to excuse his misconduct. Furthermore, the minor's counsel did not dispute the prosecutor's statement that the minor had 11 incident reports in the last few weeks, including one that required him "to be put on multiple hours of program restriction for gang agitation, gang behavior, [and] disruption." Under the circumstances, we do not see how a report from

8

the juvenile hall psychiatrist would have resulted in a more lenient disposition for the minor.

The minor makes a great many assertions to the effect that he is "rehabilitated," his parents can properly look out for him, and "[i]t is not in [his] best interest that [he] continue to stay incarcerated around troubled and at-risk youth." As we have already indicated, the minor's free and voluntary entry of a plea in the knowledge that it entailed a DJJ commitment makes all such arguments too late. Furthermore, we are obliged to point out that even at the juvenile court level, punishment for criminal conduct is one of the main objectives of a proper disposition. (Welf. & Inst. Code, § 202, subds. (b), (e).)

The minor asserts: "I have strong reason to believe that my father's arrest record/history decades back, played a role in why the DA was so harsh in sentencing." The minor goes on to spin a web of speculation that supposedly supports this belief. Like almost all of the minor's other claims, this one is unsupported by any evidence in the record and immaterial in light of his plea.

Lastly, the minor makes a series of arguments relating to sentencing credit which we find unpersuasive. The disposition awards the minor 330 days of credit for time served in custody, to be offset against his DJJ commitment term. The minor cites no evidence and makes no intelligible argument to support any other award of credits.

Having reviewed the whole record, we find no arguable issue which could result in a more favorable outcome for the minor.

## III.  DISPOSITION

The order of DJJ commitment is affirmed.

                                              /S/

                                            _____

                                            RENNER, J.

We concur:

/S/

_____
HULL, Acting P. J.

/S/

_____
HOCH, J.