Filed 11/19/24  In re J.W. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.W.,<br><br>        Defendant and Appellant. | A170026<br><br>(Contra Costa County Super. Ct. No. J23-00568) |

J.W. appeals from a dispositional order removing him from his mother's supervision and ordering that he complete the Briones Youth Academy Commitment Pathway (Commitment Pathway).  His attorney has filed a brief seeking our independent review of the appellate record, pursuant to *People v. Wende* (1979) 25 Cal.3d 436, to determine whether there is any arguable issue on appeal.  J.W. was apprised of his right to file a supplemental brief, but he did not do so.  Having reviewed the record, we find no arguable issues and affirm.

# BACKGROUND

On October 2, 2023, the Contra Costa County District Attorney filed a wardship petition under Welfare and Institutions Code[1] section 602 alleging that J.W. committed four felony offenses rising from a single incident. On October 27, then 14-year-old J.W. pled no contest to one felony count of reckless driving to evade a peace officer (Veh. Code, § 2800.2, subd. (a)) and one misdemeanor count of unlawful carrying of a loaded firearm in a vehicle (Pen. Code, § 25850, subd. (a)). According to the probation department's report prepared for the disposition hearing, on September 28, 2023, a Contra Costa County sheriff's deputy saw a speeding Honda going through red traffic lights. After a high-speed chase, the vehicle stopped and J.W. and another male jumped out of the window and ran away. The deputy saw J.W. holding an object against his body and later found a firearm in the bushes where J.W. was found hiding. At his disposition hearing, J.W. was released on home supervision for 90 days and ordered to complete the Briones Youth Academy's Community Pathway Program (Community Pathway).

In December 2023, the district attorney filed a supplemental wardship petition alleging, among other charges, that on December 3, 2022, J.W. unlawfully drove a vehicle without consent in violation of Vehicle Code section 10851, subdivision (a).

Also in December 2023, the probation department issued J.W. a notice that he had violated his probation by engaging in a fight at school, failing to obey school authorities, and using marijuana.

In January 2024, a second supplemental wardship petition was filed, which alleged, among other charges, that on May 29, 2023, J.W. unlawfully

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

drove a vehicle without consent in violation of Vehicle Code section 10851, subdivision (a).

In February 2024, the probation department issued J.W. another notice that he had violated his probation, this time by having "unauthorized movements" on 14 days in the three weeks prior to the notice and by failing to charge his ankle monitor on two other days in that time period.

On February 20, 2024, J.W. was arrested and detained at juvenile hall. Two days later, a third supplemental wardship petition was filed alleging that on February 20, J.W. violated the law by (1) receiving stolen property (Pen. Code, § 496d, subdivision (a)), (2) recklessly driving to evade a peace officer (Veh. Code, § 2800.2, subd. (a)), (3) driving without a license (Veh. Code, § 12500, subd. (a)), and (4) unlawfully driving a vehicle without consent (Veh. Code, § 10851, subd. (a)).

On February 28, 2024, J.W. pled no contest to two counts of unlawfully driving a vehicle in violation of Vehicle Code section 10851, subdivision (a), as alleged in the December and January petitions. The court dismissed the February supplemental wardship petition and probation violation allegations.

According to the probation department report prepared for the disposition hearing, the December petition arose out of the following incident. On December 2, 2022, a Honda was reported stolen. On the same day, the Honda was involved in a hit-and-run accident. Later that evening, when police stopped the Honda, J.W. and two other minors were in the car. After reviewing video surveillance of the theft, the police concluded that J.W. had stolen the car.

The January petition arose out of the following incident. On May 29, 2023, officers tried to stop a Honda, which had been stolen in Antioch two

3

days prior. The driver, later identified as J.W., sped away, traveling up to 90 miles per hour on Highway 4. When officers eventually stopped the car, J.W. and an 18-year-old girl got out of the vehicle. J.W. told the officer that he had bought the car online for $1500 on May 25.

In advance of the dispositional hearing, the probation department recommended continuation of the Community Pathway program. The department explained that if the allegations of the February petition had been sustained, the department would have screened the minor for the Commitment Pathway "as it appeared the intensive community-based services did not meet his rehabilitative needs," but because the petition was dismissed, it was recommending the minor be released and ordered to continue the Community Pathway program and to serve 90 days on home supervision.[2]

At the disposition hearing on March 13, 2024, the juvenile court found that the Community Pathway program had not and could not adequately address J.W.'s rehabilitative needs and ordered that he be committed to the Commitment Pathway program. The court relied on the conduct underlying J.W.'s pleas as well as the dismissed probation violation allegations and the allegations of the dismissed supplemental petition. The court explained its decision as follows: "I have considered a number of different factors; the severity of the offenses themselves, including his role in the offenses and his behavior. Luckily, no one was hurt in these situations but, obviously, many

---

[2] Because J.W. was not screened for the Commitment Pathway, the record does not contain information regarding the nature of that program. The parties were asked to submit supplemental briefing addressing whether the Commitment Pathway was a "secure youth treatment facility" within the meaning of section 875, subdivision (a) and in their submissions, they agree that it is not. In light of the parties' agreement, their requests for judicial notice are denied on relevancy grounds.

4

people's lives were put at risk, including [J.W.'s]. I am considering his . . . prior attempts at rehabilitation, which appear to have failed, whether the programming and treatment and education offered at Juvenile Hall would be appropriate to meet his needs. I think that there is [sic] certainly amazing programs that [J.W.] could take advantage of and, certainly, also get his . . . schooling situation figured out, given that he has continued to have issues with school. I am hopeful that he would be able to be a bit more present in a controlled environment, when he is not able to go off campus, or cut classes or go places that he is not supposed to go . . . . [¶] And whether the goals of rehabilitation and community safety can be met by assigning him to a less restrictive program, I don't believe that that is something that the Court is comfortable with, given this record. It does not seem that the [Community Pathway program] was at all helping to rehabilitate [J.W.]. His behavior continued to be problematic, if not escalating, and so I don't find that the— his rehabilitation needs can be addressed on that program. [¶] And, of course, I have taken into account, also, that he is 15 years of age, and I am also taking into account that [he] has had an incredible loss in his life, and I know that it's very traumatic for [him]."

## DISCUSSION

Upon our own independent review of the record, we find no arguable issue on appeal. J.W. was represented by counsel throughout the proceedings. In accepting his pleas, the court properly advised him of his constitutional rights, and he voluntarily waived each of them. The court advised J.W. of the consequences of his pleas and determined they were freely, voluntarily, and knowingly made. The court found that there was a factual basis for the pleas.

The court found pursuant to section 726, subdivision (a)(3) that the welfare of J.W. required that custody be taken from his mother; that finding is supported by substantial evidence. The court considered the appropriate factors in selecting the Commitment Pathway program for J.W.'s disposition and the record supports the court's exercise of discretion. (§ 725.5 ["In determining the judgment and order to be made in any case in which the minor is found to be a person described in Section 602, the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history"].) The Court did not err by considering the allegations in the dismissed petition and the dismissed probation violation allegations. (*In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1683–1684 [rule that applies in criminal proceedings to preclude reliance upon facts relating to charges dismissed as part of plea bargain in reaching sentencing decision is inapplicable when juvenile court determines proper placement for ward]; § 725.5 [court shall consider all "relevant and material evidence"].) The juvenile court correctly advised J.W. that his maximum period of physical confinement was "3 years and 8 months, or until the age of 23, whichever occurs first, and you have credit for time served of 170 days." (See § 726, subd. (d).)

Having reviewed the record pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, we find no issues requiring further briefing.

6

## DISPOSITION

The dispositional order is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.