Filed 4/22/15  In re Isaiah D. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ISAIAH D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　　　　　v.<br><br>ISAIAH D.,<br><br>　　　　Defendant and Appellant. | F070152<br><br>(Super. Ct. No. 13CEJ600167-1)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Thomas W. Casa, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　　Before Levy, Acting P.J., Gomes, J. and Franson, J.

This case comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *In re Kevin S.* (2003) 113 Cal.App.4th 97, 119, which extended *Wende* review to a minor's first appeal in a delinquency case. Having reviewed the record as required by those opinions, we affirm.

## STATEMENT OF THE CASE

On February 26, 2013, the Fresno County District Attorney's Office filed a wardship petition under section 602 of the Welfare and Institutions Code, alleging that Isaiah D. committed three counts of a violation of Penal Code section 288, subdivision (a) (lewd and lascivious act on a child under the age of 14 years). A different victim was alleged as to each count. Although Isaiah was eligible for deferred entry of judgment, he declined to admit the allegations as required for such resolution. As a result, the matter proceeded to a three-day contested jurisdictional hearing beginning May 19, 2014, after which the allegations of the petition were found true. The court referred the matter to the probation department, and also ordered Isaiah to undergo a psychological evaluation. On August 4, 2014, the court calculated the maximum confinement time as 12 years, and awarded no time credits because Isaiah spent no time in custody. The court declared Isaiah a ward of the court and placed him on probation on various terms and conditions, including that he perform 80 hours of community service and complete a sex offender program. The court also ordered Isaiah to pay restitution and a restitution fine. Isaiah filed a timely notice of appeal.

## FACTS

Although not related to them biologically, Isaiah resided in the same household as brothers J., Ma., and My. during February and March 2011.[1] Isaiah was 13 or 14 years old at the time, and several years older than the other three boys. All four slept in the

---

[1] In accordance with our Supreme Court's policy regarding protective nondisclosure, certain persons are identified by their abbreviated names. No disrespect is intended.

same bedroom.  Isaiah slept in a bed, while the three younger boys slept on blankets on the floor.

Ma. testified that Isaiah only did something to him one time.  On that occasion, Ma. was face down on his blankets when Isaiah got off of the bed, got on top of Ma., pulled down Ma.'s pants and underwear, and put his erect penis between Ma.'s butt cheeks.[2]  Isaiah stopped after a few seconds, then went to J.  Ma. could not tell if Isaiah pulled down J.'s or his own pants or just "humped" him through their clothing.  Ma. grabbed Isaiah's wrist to get him off J.  Isaiah threatened to hit Ma. if Ma. told.  When Isaiah finished with J., he went to My.  Ma. could not see what, if anything, they were doing.  Isaiah then went back to his bed.

J. testified that Isaiah exposed himself to J. once when Isaiah was in the shower and J. was using the toilet.  A day or two later, Isaiah got out of bed and touched Ma. inappropriately.  Isaiah showed Ma. his penis, and tried to pull down Ma.'s shorts and put his penis in Ma.  Ma. shoved him off.  Isaiah then went to J. and pulled down J.'s pants.  J. shoved and kicked Isaiah, and Isaiah got off.  Isaiah told Ma. and J. that if they told, he would hurt them.  He then went back to bed and everybody fell asleep.  It only happened that one night.

My. testified that Isaiah exposed himself to My. more than once when My. was using the bathroom while Isaiah was in the shower.  On a separate occasion, during the time My. and his brothers slept in the same room as Isaiah, My. was asleep when he felt somebody touching his penis.  He woke to find it was Isaiah.  By the time My. could turn around, Isaiah had managed to get on the bed.  My. could hear the bed moving and saw Isaiah shifting the blankets around.  Isaiah was the only one moving.  Ma. and J. were

---

[2]  The child witnesses understandably used less sophisticated vocabulary to describe what happened.

3.

asleep. This only happened one time. It was a couple of days before or after Ma. and J. told My. what happened to them.

The boys did not say anything to their mother at first, even after she and they moved into their own place in April 2011. In the summer of 2012, J. mentioned Isaiah doing "the funny dance" (exposing himself) in the shower, but the boys denied Isaiah had done anything more than that. The boys' mother found out about the molestations from her sister on July 3, 2012, and reported it to police the same day.[3]

Fresno Police Officer Rij interviewed the boys on July 3, 2012. Ma. said he was assaulted every night for about 10 days. J. said it happened over a 12-day period. He said that on one occasion, he tried to get away, but Isaiah grabbed him by the throat and choked him. Both boys described sodomy.

All three boys participated in forensic interviews after the police became involved.[4] My. said Isaiah twice did something wrong to him by trying to touch him in the wrong place. The first time, the brothers were sleeping on a mattress on the floor. My. was turned on his side, talking to Ma., when Isaiah got up, pushed My. down, and reached for his genitals like he was trying to touch them. My. also said his brothers did not see this happen, because they were asleep. My. said he told Ma. the next morning. On the second occasion, My. was close to falling asleep when he felt Isaiah rubbing him near his penis, on the outside of his pajamas. My. never saw this happen to anyone else, but Ma. said it also happened to him.

---

**3**      While watching a television show that depicted a sexual assault, the boys' older cousin asked if anything like that had ever happened to them. All three said they were touched "a bunch of times" by Isaiah. Ma. said he was touched; My. said he got touched and Isaiah stuck his penis inside him; and J. said the same thing happened to him as happened to My. The boys' cousin told his mother, the boys' aunt. The aunt then told the boy's mother.

**4**      Video recordings of the interviews were played for the court.

J. also said something happened twice. The first time, he went to use the restroom. Isaiah was taking a shower and was already naked. Isaiah opened the shower curtain and showed J. his erect penis. On the other occasion, J. was going to sleep when Isaiah tried to put his penis next to J.'s and Ma.'s bottoms. J. hit Isaiah with a pillow because Isaiah was on Ma., putting his penis in Ma.'s bottom, then Isaiah tried to do the same thing to J. My. was asleep.

Ma. related that Isaiah did "nasty stuff" to Ma. and his little brother. One night, Ma. went to use the bathroom while Isaiah was taking a shower. Isaiah opened the shower curtain and showed Ma. his genitals. Then, when Ma. went to sleep that night, Isaiah started "humping" Ma.'s stomach. He then turned Ma. over, put his penis in Ma.'s bottom, quickly pulled it out, and told Ma. not to tell. Isaiah then went to Ma.'s brother, but Ma. did not know what he did, because Ma. turned the other way and went back to sleep.

## APPELLATE COURT REVIEW

Isaiah's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*People v. Wende*, *supra*, 25 Cal.3d 436; *In re Kevin S.*, *supra*, 113 Cal.App.4th 97.) The opening brief also includes the declaration of appellate counsel, stating that Isaiah was advised he could file his own brief with this court. By letter dated January 26, 2015, we invited Isaiah to submit additional briefing. To date, he has not done so.

After independent review of the record, we conclude there are no reasonably arguable legal or factual issues.[5]

---

[5] Through appellate counsel, Isaiah requests that we review, as a possible issue on appeal, whether My.'s testimony was reasonable, credible, and of solid value such that a rational trier of fact could find true, beyond a reasonable doubt, all of the elements of a violation of Penal Code section 288, subdivision (a), as alleged in the petition. Viewing the entire record in accordance with the applicable legal principles (see *People v. Maciel*



## **DISPOSITION**

The judgment is affirmed.

---

(2013) 57 Cal.4th 482, 514-515), we conclude a rational trier of fact could so find. Subdivision (a) of Penal Code section 288 "is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People v. Martinez* (1995) 11 Cal.4th 434, 452.) Although there were inconsistencies in his account, and between that account and those of his brothers, My. testified to such a touching, and also related such a touching to his cousin and during the forensic interview. "'"Although an appellate court will not uphold a judgment … based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge … to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends."' [Citation.]" (*People v. Maciel*, *supra*, 57 Cal.4th at p. 519.)